Ellis Wayne **FELKER**, Petitioner,

v.

Tony **TURPIN**, Warden, Georgia Diagnostic and Classification Center, Respondent.

No. 96–1077.

United States Court of Appeals, Eleventh Circuit.

May 2, 1996.

Stephen C. Bayliss, M. Elizabeth Wells, Atlanta, Georgia, for petitioner.

Susan V. Boleyn, Sr. Asst. Atty. Gen., Atlanta, Georgia, for respondent.

Before BIRCH, BLACK and CARNES, Circuit Judges.

BY THE COURT:

In *Felker v. Thomas*, 52 F.3d 907 (11th Cir.), *extended on denial of rehearing*, 62 F.3d 342 (11th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 956, 133 L.Ed.2d 879 (1996), we affirmed the denial of habeas corpus relief as to the murder, rape, aggravated sodomy, and false imprisonment convictions, as well as the death sentence of Ellis Wayne Felker. The procedural history, evidence, and facts in the case are summarized in our prior opinions and in the Georgia Supreme Court's decision affirming his convictions and sentence on direct appeal, *Felker v. State*, 252 Ga. 351, 314 S.E.2d 621, *cert. denied*, 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984).

On February 20, 1996, the Supreme Court denied Felker's petition for writ of certiorari seeking review of our decision denying his first federal habeas corpus petition. On April 17, 1996, the Superior Court of Houston County, Georgia, set May 2 through May 9, 1996, as the period during which Felker's execution would be carried out. On April 29, 1996, Felker filed a petition for writ of habeas corpus in the Superior Court of Butts County, Georgia. (It was his second state habeas petition; his first had been denied in 1990.) The Superior Court denied Felker's second state habeas petition on May 1, 1996, and the Georgia Supreme Court denied his

petition for writ of certiorari at 11:00 a.m. ET, today.

Felker is now back before us. Yesterday afternoon, he lodged with this Court a request for a stay of execution and an application, pursuant to § 106 of the newly enacted Antiterrorism and Effective Death Penalty Act of 1996 ("the Act"), for permission to file a second federal habeas petition in the district court. He lodged a corrected application at 9:35 a.m. ET, this morning, and his application was formally filed at 11:30 a.m. ET, today.

Only last month, the Supreme Court emphasized the nonautomatic nature of stays of execution in second or successive habeas petition cases. Vacating the entry of a stay order by the Eighth Circuit in *Bowersox v. Williams,* —— U.S. ——, 116 S.Ct. 1312, 134 L.Ed.2d 494 (1996), the Court reiterated that: "A stay of execution pending disposition of a second or successive federal habeas petition should be granted only when there are substantial grounds upon which relief might be granted." *Id.* (citation and internal quotation marks omitted). The Supreme Court reminded us, in no uncertain terms, that: "[e]ntry of a stay on a second or third habeas petition is a drastic measure, and we have held that it is ' "particularly egregious" ' to enter a stay absent substantial grounds for relief." *Id.* (quoting *Delo v. Blair,* 509 U.S. 823, 113 S.Ct. 2922, 125 L.Ed.2d 751 (1993)).

Neither party in the present case contends that the standard applicable to stays of execution in second or successive petition cases has been changed by the Act.[1] Accordingly, we proceed to determine whether Felker has shown substantial grounds upon which relief might be granted, thus entitling him to the "drastic measure" of a stay of execution in this second petition case.

Felker requests that we enter a stay of execution "to allow full briefing on the many life or death issues created by the Act," which he contends violates the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments, the Supremacy Clause, and the Separation of Powers doctrine. Alternatively, he requests a stay "because the Applicant has satisfied the provisions of the Act and is entitled to a remand." (Footnote omitted). We address the second alternative first.

## I. FELKER'S CONTENTION THAT HE HAS SATISFIED THE PROVISIONS OF THE ACT AND IS ENTITLED TO A REMAND

Section 106 of the Act amends 28 U.S.C. § 2244(b) to read, in pertinent part:

(b)(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.

(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—

(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

(3)(A) Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

---

1. Nothing that we say about the Act in this opinion concerns § 107, which applies special habeas corpus procedures to capital cases arising in those states that qualify under the provisions of the newly enacted 28 U.S.C. § 2261. There is no contention, yet, that the State of Georgia has shown—or even had an opportunity to show—that it qualifies to benefit from the special procedures established by § 107 of the Act. Whether it does is a question for another day.

(B) A motion in the court of appeals for an order authorizing the district court to consider a second or successive application shall be determined by a three-judge panel of the court of appeals.

(C) The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection.

■ Felker's application seeks an order from this Court authorizing the district court to consider a second or successive petition containing two claims. The first is a *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), claim. Felker does not, and could not, contend that this is a claim the factual predicate of which "could not have been discovered previously through the exercise of diligence," within the meaning of new § 2244(b)(2)(B), because the factual predicate of the claim has been available on the record since Felker's trial.

As for § 2244(b)(2)(A), we have held that the *Cage* rule is retroactively applicable to cases that had completed direct review before the *Cage* decision was announced. *Nutter v. White*, 39 F.3d 1154 (11th Cir.1994). However, we cannot find that Felker's *Cage* claim was "previously unavailable" to him when he filed his first habeas petition in 1993, which was long after *Cage* was decided. Felker argues in his application that the *Cage* claim was not available to him until *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), made it obvious that the *Cage* rule was retroactive. Even assuming for present purposes the dubious legal premise that *Cage* was not available to Felker until the *Sullivan* decision was announced, the fact remains that *Sullivan* was decided on June 1, 1993, and Felker's first habeas petition was not formally accepted and placed on the docket until June 2, 1993.[2] And, of course, nothing would have prevented Felker from filing a motion to amend his first petition, even if the *Sullivan*

decision had been released days or weeks after, instead of just before, the petition was filed. No answer was filed to the petition until August 6, 1993, and amendments to habeas petitions are freely permitted.

■ The other claim Felker seeks to litigate in a second or successive petition is a claim that "it violates the Eighth and Fourteenth Amendments for a non-physician, state agent to provide sole evidence upon which a jury relied to determine the critical issue of time of death." As we explain on pp. 1310–12, below, this claim has no basis in the record, which contradicts it. However, even assuming for present purposes that there was some factual basis for the claim, it is not one which "relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" as required by newly amended § 2244(b)(2)(A). Not only is there no new decision announcing a rule of law that has been made retroactively applicable, Felker does not cite any decisional law whatsoever in support of his proposition.

As for § 2244(b)(2)(B), Felker·does not contend that the factual predicate for this claim could not have been discovered previously through the exercise of due diligence. The factual predicate, to the extent any exists, is apparent on the face of the trial record. The qualifications or lack of qualifications of Medical Examiner Warren Tillman were brought out on direct and cross-examination at the trial. There is no contention that Tillman did not testify truthfully concerning his background and qualifications. Moreover, as we explain on pp. 1310–12 below, the facts underlying this claim if proven and viewed in light of the evidence as a whole, would not be sufficient to establish by a preponderance of the evidence, much less by clear and convincing evidence, that but for the alleged constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense. Ac-

---

**2.** Felker attempted to file his first habeas petition on April 27, 1981, but he did not pay the filing fee, and the magistrate judge denied his motion to proceed in forma pauperis. Not until Felker paid the filing fee on June 2, 1981, was the

petition placed on the civil docket. On June 9, 1981, the district court judge entered an order granting Felker's motion to proceed in forma. pauperis and for appointed counsel.

cordingly, under the new Act, Felker is not entitled to an order from this Court authorizing him to file a second or successive petition raising this claim.

## II. FELKER'S CONTENTION THAT THE ACT IS UNCONSTITUTIONAL

Felker also contends that the Act violates his rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments, as well as the Supremacy Clause and the Separation of Powers doctrine. His application provides very little discussion and cites no authorities for that proposition. However, given the time constraints facing us, we choose to analyze this claim not in the abstract, but instead in terms of whether the Act makes any difference insofar as a second or successive petition raising the claims Felker wants to litigate is concerned. *Cf. Spector Motor Serv. v. McLaughlin*, 323 U.S. 101, 105, 65 S.Ct. 152, 154, 89 L.Ed. 101 (1944) ("If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality ... unless such adjudication is unavoidable."); *South Florida Free Beaches, Inc. v. City of Miami, Florida*, 734 F.2d 608, 612 (11th Cir.1984) (declining to address whether a statute was unconstitutional, because "[a]ny resolution of this issue would not affect the outcome of the case"). If Felker is barred from litigating the claims he presents under pre-existing law, then the Act's restrictions can have no unconstitutional effect on him. *Cf. United States v. Missio*, 597 F.2d 60, 61 (5th Cir.1979) (affirming a denial of 28 U.S.C. § 2255 relief and holding that the district court correctly declined to address an issue involving the constitutionality of prior convictions where the same sentence would have been imposed even if those convictions had not been included in the pre-sentencing report). Stated somewhat differently, if under pre-existing law Felker's claims do not present substantial grounds upon which relief might be granted, then his claim that the Act unconstitutionally restricts his presentation of such claims does not present substantial grounds for relief, either.

Under the pre-Act law concerning second or successive petitions, Felker would not be able to litigate the merits of the claims he presents unless he was able to establish cause and prejudice sufficient to excuse his failure to present those claims in his first petition, or failing that, unless the constitutional claims he attempts to litigate fall within the "narrow class of cases ... implicating a fundamental miscarriage of justice." *Schlup v. Delo*, —— U.S. ——, ——, 115 S.Ct. 851, 861, 130 L.Ed.2d 808 (1995) (quoting *McCleskey v. Zant*, 499 U.S. 467, 494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991)) (alteration in original). As it applies to claims relating to the guilt stage of a capital case, the fundamental miscarriage of justice exception to the cause and prejudice rule "requires the habeas petitioner to show that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Id.* at ——, 115 S.Ct. at 867 (quoting *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649–50, 91 L.Ed.2d 397 (1986)). The petitioner must show that absent the constitutional violation "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* That is a stronger showing than is required to establish prejudice, and will be found only in a "truly 'extraordinary'" case. *Id.*

We proceed to examine each of Felker's claims under that pre-Act second or successive petition law.

### A. The *Cage* Claim

 Felker cannot establish, and has not proffered, any valid cause for his failure to raise the *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), claim when he filed his first petition. *Cage* was announced years before Felker filed his first petition, and *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), was announced just before the petition was formally filed and certainly well within the time for amending it. *See supra* p. 1306. Nor has Felker established the fundamental miscarriage of justice exception to the cause and prejudice requirement. He has not established that it is more likely than not that

no reasonable juror would have convicted him but for the reasonable doubt jury instructions that were given in this case. Accordingly, pre-Act second or successive petition doctrine bars the *Cage* claim. It is not necessary to our application of pre-Act second or successive petition law to decide whether the claim also lacks merit. However, in the interest of completeness we also note that the claim, which can be decided based upon the trial record, does lack merit.

■ Felker argues that the trial court's reasonable doubt instruction violated his due process rights because the instruction allowed the jury to convict him based on less than a standard of utmost certainty.[3,4] Felker contends that by equating proof beyond a reasonable doubt with proof "to a moral certainty" the jury was allowed to convict based on less proof than that required to convict beyond a reasonable doubt.

In *Cage,* the Supreme Court held that a jury instruction that:

> equated a reasonable doubt with a "grave uncertainty" and an "actual substantial doubt," and stated that what was required was a "moral certainty" that the defendant was guilty ... suggest[ed] a higher degree of doubt than is required for acquittal under the reasonable-doubt standard. When those statements are then considered with the reference to "moral certainty," rather than evidentiary certainty, it becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause.

498 U.S. at 41, 111 S.Ct. at 329–30. The Supreme Court clarified its holding in *Cage* in *Victor v. Nebraska* and its companion case, *Sandoval v. California.* —— U.S. ——, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994). There the Court held that although no particular words are required to define reasonable doubt, the trial court must correctly explain the standard in articulating the prosecution's

burden of proof. *Id.* at ——, 114 S.Ct. at 1243.

We described our method of review of a reasonable doubt charge in *Harvell v. Nagle,* 58 F.3d 1541 (11th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1859, 134 L.Ed.2d 958 (1996):

> When reviewing reasonable-doubt charges, we consider the instruction as a whole to determine if the instruction misleads the jury as to the government's burden of proof. *See United States v. Veltmann,* 6 F.3d 1483, 1492 (11th Cir.1993). The Supreme Court has phrased the proper constitutional inquiry as "whether there is reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the [In re] *Winship* [397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368] standard." *Victor,* —— U.S. at ——, 114 S.Ct. at 1243.

*Id.* at 1542. In *Harvell,* the petitioner argued that the instruction given equated reasonable doubt with "actual and substantial doubt" and "moral certainty." *Id.* We held that when viewed in the context of the remainder of the jury charge, the trial court's references to "actual and substantial doubt" and "moral certainty" were eradicated and "did not create a reasonable likelihood that the jury understood the instruction to allow conviction based on proof insufficient to meet the *Winship* standard." *Id.* at 1545.

In *Cage,* the Supreme Court addressed three phrases that it deemed to have tainted the charge: "grave uncertainty," "actual substantial doubt," and "moral certainty." 498 U.S. at 41, 111 S.Ct. at 329. In *Harvell,* we addressed two potentially problematic phrases. *Harvell,* 58 F.3d at 1543. Here, Felker can only point to one phrase, used twice in the jury charge, that he argues constitutes a constitutional defect, *i.e.,* the use of the term "moral certainty."

---

**3.** The trial court's instruction is affixed to this opinion as Appendix A.

**4.** We note that Felker does not challenge the "two inferences" language in the jury charge, *i.e.,* that portion of the charge in which the court

stated that, "if the circumstances in the case are subject to equally reasonable constructions, one indicating guilt and the other innocence, you are obligated under the law to accept that construction indicating innocence." App. A., *infra* p.

The *Harvell* charge made the following references to "moral certainty":

> Let's don't forget the central issue that we are here about: Are you convinced—and I will talk about the measure of proof in just a moment, *beyond a reasonable doubt and to a moral certainty* that the State has proven Roy Avon Harvell intentionally, that is purposely, shot and killed Mr. Midgett or shot him for the purpose of killing him.
>
> \* \* \* \* \* \*
>
> So, the State, again, *has to prove guilt beyond a reasonable doubt or to a moral certainty in order to overcome the presumption of innocence.*
>
> \* \* \* \* \* \*
>
> The State is not required to convince you of Mr. Harvell's guilt beyond a reasonable doubt and to the point that you could not possibly be mistaken, *but simply beyond all reasonable doubt and to a moral certainty.*

*Id.* at 1545, 1546.

The jury charge in Felker's case made the following references to "moral certainty":

> In a criminal case, however, the state must prove each of its contentions *beyond a reasonable doubt and to a moral certainty.*
>
> The law does not require the defendant to prove that he is innocent. His innocence is conclusively presumed until the contrary is established by the evidence beyond a reasonable doubt. The state, however, is not required to prove his guilt beyond all doubt. *Moral and reasonable certainty is all that can be expected in a legal investigation.*

App. A., *infra* p. 1313 (emphasis added). In Felker's case, as in *Harvell*, any potential constitutional harm caused by these references to "moral certainty" were eradicated by the language in the rest of the charge, which grounded the definition of reasonable

doubt in the evidence. *Harvell*, 58 F.3d at 1543–44; *see also Victor*, —— U.S. at ——, 114 S.Ct. at 1248.

In *Victor*, the Court found that the trial court's reference in the charge to "an abiding conviction ... of the guilt of the accused" did "much to alleviate any concerns that the phrase moral certainty might be misunderstood in the abstract." *Victor*, —— U.S. at ——, 114 S.Ct. at 1249, 1250. In *Harvell*, the trial court instructed the jury that reasonable doubt had to be derived from the evidence and that reasonable doubt could not be "fanciful, vague, whimsical, capricious, conjectural or speculative." *Harvell*, 58 F.3d at 1543. Likewise, in this case, the trial court's definition of reasonable doubt as "doubt which is based on the evidence, a lack of evidence or a conflict in the evidence" and "doubt which is reasonably entertained as opposed to vague or fanciful or farfetched doubt," served to erase any taint created by the term "moral certainty" and to thus place it beyond the potential for constitutional harm. App. A., *infra* p. 1313. "The instruction thus explicitly told the jurors that their conclusion had to be based on the evidence in the case." *Victor*, —— U.S. at ——, 114 S.Ct. at 1248. "Accordingly, there is no reasonable likelihood that the jury would have understood moral certainty to be disassociated from the evidence in the case." *Id.* In sum, the combination of the defining phraseology set out above, together with the remainder of the charge, which included other explanations and qualifications of the term "reasonable doubt,"[5] "convinces us that it was *not* reasonably likely that the jury understood the instructions to allow conviction based upon proof insufficient to meet the *Winship* standard." *Harvell*, 58 F.3d at 1545 (emphasis added).

In addition to contending that the trial court's charge to the jury violated his due process right under *Cage*, Felker also argues that the prosecutor's remarks to individual

---

1315. We do not, therefore, address this possible contention.

5. "If after you consider all the facts and circumstances in the case your minds are wavering, unsettled and unsatisfied, then that is the doubt of the law, and you should acquit the defendant." App. A., *infra* p. 1314. "No conviction should

rest upon suspicion, conjecture or the possibility of guilt." *Id.* at 1105–06. "[B]efore you would be authorized to convict on evidence which is entirely *circumstantial*, such evidence must not only prove the guilt of the accused beyond every reasonable doubt, but it must also exclude every other reasonable theory except that of guilt." *Id.* at 1314.

jurors during voir dire regarding the state's burden of proof implicate the same concern as that addressed by the Supreme Court in *Cage.* Felker correctly points out that, during voir dire, the prosecutor explained to several jurors that "moral and reasonable certainty is all that is required in a legal investigation." *See, e.g.,* (R. 215, 265, 314, 393, 587, 629).

■ The purpose of voir dire examination is to allow the government and the defendant to evaluate and select an impartial jury capable of fairly deciding the issues presented by applying the law *as instructed by the court* to the facts as produced during the trial. *United States v. Miller,* 758 F.2d 570, 571 (11th Cir.) (emphasis added), *cert. denied,* 474 U.S. 994, 106 S.Ct. 406, 88 L.Ed.2d 357 (1985). We note that, immediately following voir dire, the court explicitly instructed the impanelled jurors that "[a]rguments by counsel are not evidence, and you are not bound by them." (R. 4). In light of our conclusion that the trial court's jury charge, viewed in its entirety, appropriately instructed the jury with respect to its responsibility to find the defendant guilty beyond a reasonable doubt, and therefore did not violate Felker's due process right pursuant to *Cage,* we find that the prosecutor's remarks during voir dire to which Felker now objects were adequately rectified by the jury charge and the timely admonition to the jury discussed above, and did not taint the trial or the verdict.

Therefore, we conclude that even if Felker's claim under *Cage* was not barred under pre-Act second or successive petition law, he could not prevail on its merits because the trial court's references to "moral certainty," when viewed in context, as well as the admonition of the trial judge to the jury relative to the arguments of counsel, the entire charge, and the proximity of the charge to the jury's deliberation, did not create a reasonable likelihood that the jury was misled as to the proper burden of proof or encouraged to arrive at its verdict by applying a standard of proof lower than reasonable doubt.

**B. Felker's Claim that Permitting a Non–Physician Medical Examiner to Testify to the Time of Death Violated Due Process and the Eighth Amendment**

■ Felker offers no cause for his failure to raise in his first federal habeas petition the claim that it was constitutional error to permit Warren Tillman, a non-physician medical examiner, to give his opinion concerning the time of the victim's death. Medical Examiner Tillman's qualifications, or lack thereof, were fully developed during direct and cross-examination at trial. Accordingly, the claim that Felker belatedly seeks to raise concerning that matter has been fully available to him since the trial in 1983. Felker does not proffer any other cause for his failure to raise this claim in his first federal habeas proceeding in 1993.

Turning to the fundamental miscarriage of justice exception to the cause and prejudice requirement, Felker has not shown that it is more likely than not that no reasonable juror would have convicted him but for the alleged constitutional error of permitting Tillman to offer an opinion as to the time of death. Tillman testified that in his opinion the victim could have been killed as many as fourteen days prior to her body being discovered on December 8, 1981, which would mean that she could have been killed as early as November 24, 1981, the date she was last seen alive. Felker had an alibi from 7:00 p.m. November 25, 1981 forward. He contends that Tillman's testimony was critical to his conviction, because he argues, "[t]he only evidence that the death occurred when [Felker] could have caused it was the 'expert' testimony of a non-physician [Tillman] employed by the prosecution arm of the State of Georgia." Application at 30–31. That simply is not true. Dr. James Q. Whitaker, a highly qualified pathologist and medical examiner (R. 428–30) also examined the pertinent evidence including photographs, the body itself after it was disinterred, tissue slides, and so forth, and he reached his own opinion concerning the time of death. The Georgia Supreme Court summarized Dr. Whitaker's testimony as follows:

Dr. Whitaker, the medical examiner for Houston County, testified for the state in

rebuttal. His early experience was in Baltimore, Maryland, and, perhaps due to the proximity of Chesapeake Bay, he had observed over "200 drowning or immersion-type cases." Dr. Whitaker testified that—considering the air temperatures in the relevant time period; the fact that most missing and murdered persons die soon after they disappear; the fact that when Joy Ludlam was found, she was wearing the same clothes as when she was last seen alive; and the extent of decomposition—in his opinion, death occurred two weeks prior to the discovery of the body.

*Felker v. State*, 252 Ga. at 359, 314 S.E.2d at 631. We have reviewed Dr. Whitaker's testimony at trial, and he did testify that: "I would say most—in my opinion, the time of death is shortly after she became missing, and in my opinion it's more likely, with a reasonable degree of medical probability, that the death occurred 14 days ago when she was missing, found missing, but certainly, with the degree of decomposition that is present, three to five days, within that time frame is possible, but I think that the time, in my opinion, is older than that." (R. 997–98).

There is no question that Dr. Whitaker is a qualified pathologist. He is a medical doctor, having pursued a study in the specialty of pathology, including an internship and residency in pathology, and he is a board certified anatomic and clinical pathologist. He had taught forensic pathology, and at the time of trial was the Chief Pathologist and Director of Laboratories and Clinical Pathology at the Houston County Hospital, in Warner Robbins, Georgia. (R. 428). At the time of his trial testimony, Dr. Whitaker had performed over 1500 autopsies. (R. 430).

Moreover, there was other evidence, in addition to Dr. Whitaker's expert opinion, that the victim's death occurred fourteen days before her body was discovered, making it likely that she was killed around November 24, 1981. It was undisputed that the victim's car was seen parked in an local bank parking lot on the evening of November 24, and the next morning her car was still parked there, apparently abandoned. There was also evidence that she had placed a call to her employer during the early evening of November 24, stating that she would not be working that evening. Felker admitted to an officer that the victim had made that telephone call from his home. When her body was discovered two weeks after she disappeared, it was clothed in the same dress she had been wearing when last seen on November 24. When that evidence is combined with other evidence of Felker's guilt, including the remarkable similarities between this crime and a similar crime he had committed and been convicted for earlier, *see Felker v. Thomas*, 52 F.3d at 908, we readily conclude that Felker has not shown that but for the alleged constitutional violation of permitting Warren Tillman to offer his opinion as to the time of death, it is more likely than not that no reasonable juror would have convicted him.

■ Although pre-Act law certainly did not restrict the second and successive petition bar only to claims that lacked merit, we do note, for the sake of completeness, that this claim lacks merit. As we have pointed out previously, this claim is based upon the false premise that Warren Tillman was the only expert witness who testified to an opinion consistent with the victim having been killed at a time for which Felker did not have an alibi. But the record clearly shows that Dr. Whitaker, who was unquestionably qualified to give such an opinion, also testified to the same opinion as Tillman. In addition to the expert testimony, there was other evidence, which we have already discussed, establishing that the victim died as early as November 24, 1981. The standard of review for state evidentiary rulings in federal habeas corpus proceedings is a narrow one. Only when evidentiary errors "so infused the trial with unfairness as to deny due process of law" is habeas relief warranted. *Lisenba v. California*, 314 U.S. 219, 228, 62 S.Ct. 280, 286, 86 L.Ed. 166 (1941), *quoted and applied in, Estelle v. McGuire*, 502 U.S. 62, 75, 112 S.Ct. 475, 484, 116 L.Ed.2d 385 (1991); *accord Baxter v. Thomas*, 45 F.3d 1501, 1509 (11th Cir.) (evidentiary ruling claims reviewed only to determine whether the error "was of such magnitude as to deny fundamental fairness"), *cert. denied*, —— U.S. ——,

116 S.Ct. 385, 133 L.Ed.2d 307 (1995); *Kight v. Singletary,* 50 F.3d 1539, 1546 (11th Cir. 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 785, 133 L.Ed.2d 735 (1996). Such a determination is to be made in light of the evidence as a whole. Viewing the evidence in this case in its entirety, the introduction of Warren Tillman's testimony did not so infuse the trial with unfairness as to deny Felker fundamental fairness and due process of law.

### C. Actual Innocence as an Independent Constitutional Claim

■ Thus far we have discussed actual innocence only in the *Schlup v. Delo* "gateway" procedural, as distinguished from independent substantive, sense. *See* —— U.S. at ——–——, 115 S.Ct. at 860–61. Although not entirely clear, it appears from his application that Felker also may be seeking to either litigate actual innocence as a separate constitutional claim, or at least be seeking to challenge the Act as unconstitutional on the grounds that it precludes assertion of a separate and independent constitutional claim of actual innocence. More likely the latter. In regard to that possibility, the State has responded that the Act does not modify the law involving actual innocence claims. We need not decide whether the Act precludes such claims, because even if it did, that modification of the law would not affect Felker, who does not have a valid actual innocence claim, anyway.

Justice O'Connor joined by Justice Kennedy, both of whose votes were necessary to the majority in *Herrera v. Collins,* 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993), explained that that decision left open the difficult question of whether federal habeas courts may entertain convincing claims of actual innocence. *Id.* at 472, 113 S.Ct. at 874. Justice O'Connor characterized the *Herrera* decision as assuming "for the sake of argument that a truly persuasive demonstration of actual innocence would render any

such execution unconstitutional and that federal habeas relief would be warranted if no state avenue were open to process the claim." *Id.* Making that same assumption, Felker is not entitled to habeas relief for two reasons. First, the *Herrera* opinion itself noted that, unlike Texas, Georgia is a state that not only permits motions for new trial on newly discovered evidence grounds, but it also provides that the time for filing such motions can be extended. *Id.* at 411 n. 11, 113 S.Ct. at 866 n. 11; Ga.Code Ann. §§ 5–5–40 and 5–5–41 (Michie 1995).[6] Therefore, this is not a case where there is "no state avenue ... open to process the claim." *Id.* at 472, 113 S.Ct. at 874.

Second, Felker has failed to persuasively demonstrate his actual innocence. Justice O'Connor's characterization of the habeas petitioner in *Herrera* is equally applicable to Felker:

> He was tried before a jury of his peers, with the full panoply of protections that our Constitution affords criminal defendants. At the conclusion of that trial, the jury found petitioner guilty beyond a reasonable doubt. Petitioner therefore does not appear before us as an innocent man on the verge of execution. He is instead a legally guilty one who, refusing to accept the jury's verdict, demands a hearing in which to have his culpability determined once again.

*Id.* at 419–20, 113 S.Ct. at 870. The only evidence Felker offers that was not offered at his trial are the affidavits of two medical examiners who criticize the qualifications of Medical Examiner Tillman and disagree with his opinion about the time of death. Neither of Felker's new experts impugn in any way the qualifications of Dr. James Whitaker, another medical examiner, who testified to the same opinion about the time of death as did Tillman. At most, the belated affidavits are cumulative evidence in support of Felker's position on the time of death issue.

---

**6.** At the time of Felker's conviction and sentencing in February 1983, Georgia law allowed defendants to move for a new trial on the basis of newly discovered evidence. *See Dick v. State,* 248 Ga. 898, 287 S.E.2d 11, 13 (1982). While Georgia law generally requires motions for a new trial to be made within 30 days of entry of judgment, *see* Ga.Code Ann. § 5–5–40 (Michie 1995), it also permits "extraordinary" motions to be filed after this deadline, *see* Ga.Code Ann. § 5–5–41 (Michie 1995). This was also true back in 1983 at the time of Felker's conviction and sentence in Houston County Superior Court. *See Dick,* 287 S.E.2d at 13 & n. 2.

There was expert opinion testimony on both sides of that issue at trial, as well as other evidence. Considering it all, we do not doubt in the least Felker's guilt.

Moreover, permitting such last minute affidavits to reopen guilt issues, absent truly extraordinary circumstances which are not present here, would open up virtually any capital case in which expert testimony was presented on behalf of the State to relitigation on the eve of execution. We do not believe that the Constitution or anything in the *Herrera* decision requires that, particularly where, as here, we are convinced that, "[p]etitioner is not innocent, in any sense of the word." *Id.* at 419, 113 S.Ct. at 870 (concurring opinion of O'Connor, J., joined by Kennedy, J.).

### III. CONCLUSION

Felker has failed to show substantial grounds upon which relief might be granted under the new Act. Likewise, he has failed to show substantial grounds upon which relief might be granted insofar as any constitutional issues involving the Act are concerned, because he would not be entitled to any relief even under pre-Act law.

The request for a stay of execution is DENIED.

The application for an order authorizing the filing of a second or successive petition is DENIED.

### APPENDIX A

The State of Georgia

vs.

Ellis Wayne Felker

Indictment No. 12405
Murder, Agg. Sodomy, Rape, et al.

### CHARGE OF THE COURT

Members of the jury, on May 17, 1982, the grand jury of this circuit indicted the defendant, Ellis Wayne Felker, and charged him with the offenses of rape, aggravated sodomy, false imprisonment, robbery and murder.

To that indictment, and to those charges, Mr. Felker has entered his plea of not guilty, thereby denying and challenging each and every essential allegation in the indictment.

As I previously mentioned to you, the robbery charge is no longer before you because as a matter of law such charge was not proved, and the instructions which I will now give you will apply to each remaining charge in the indictment, unless I state otherwise.

Whether the other charges in the indictment have been proven is for you to decide based on the evidence on the instructions I will now give you.

The indictment, along with the defendant's plea of not guilty, will be out with you when you consider the case, and you may refer to them. They are not evidence, however, and you should not consider them as such. They simply represent the method by which the case was brought into court for trial.

In spite of his indictment, the defendant is presumed to be innocent until his guilt is established by the evidence to the exclusion of and beyond every reasonable doubt. The burden of proof in this case, as in all criminal cases, rests upon the state, from the beginning to the end of the trial, to establish beyond a reasonable doubt every fact essential to the conviction of the defendant. That is, the state must prove beyond a reasonable doubt that a crime was in fact committed and that the defendant was the person who committed the crime.

The standard of proof in a criminal case is higher than that required in a civil case. In civil cases, a simple preponderance or greater weight of the evidence is considered sufficient to sustain a contention. In a criminal case, however, the state must prove each of its contentions beyond a reasonable doubt and to a moral certainty.

The law does not require the defendant to prove that he is innocent. His innocence is conclusively presumed until the contrary is established by the evidence beyond a reasonable doubt. The state, however, is not required to prove his guilt beyond all doubt. Moral and reasonable certainty is all that can be expected in a legal investigation.

A reasonable doubt is defined as a doubt which is based on the evidence, a lack of evidence or a conflict in the evidence. It is a doubt which is reasonably entertained as opposed to a vague or fanciful or farfetched doubt.

If after you consider all the facts and circumstances in the case your minds are wavering, unsettled and unsatisfied, then that is the doubt of the law, and you should acquit the defendant. On the other hand, if such doubt does not exist in your minds as to his guilt, you should convict him.

One of the elements in every criminal case is the matter of venue; that is, the state must prove that the crime occurred in the county in which the case is being tried. For example, if a crime occurs in Houston County, then the trial for that crime shall be in Houston County.

In a murder case, the trial may be held in the county where the cause of death was inflicted or in the county where death actually occurred, if it cannot be determined where the cause of death occurred.

The defendant in this case contends that the state has not proved the element of venue. In that respect I instruct you that it is the state's burden, with respect to each charge in the indictment, to prove beyond a reasonable doubt that the crime might have been committed in Houston County. If the state fails to do this, then the defendant is entitled to a verdict of not guilty.

You are the sole judges of the credibility of the witnesses and of the weight to be given their testimony. In deciding the credit to be given any witness' testimony, you may take into account his or her ability and opportunity to observe the facts; his or her memory; the witness' manner while testifying; any interest, bias or prejudice the witness may have, and you may also consider the reasonableness of such testimony.

If there are conflicts in the evidence, it is your duty under the law to reconcile them wherever possible so as to make all the witnesses speak the truth and not attribute a false statement to any of them. If you cannot do this, however, then you would believe that testimony which is most reasonable and credible to you.

A witness' testimony may be impeached or discredited by disproving the facts testified to by him or her, or by showing that the witness made a previous statement or statements inconsistent with or contradictory to the testimony given at trial.

If you determine that the testimony of any witness has been impeached or discredited in that manner, you are authorized to believe or disbelieve said witness' testimony in whole or in part.

If you find that any witness has been placed under hypnosis for the purpose of refreshing or improving that witness' recollection, and if you find that such testimony is in whole or in part induced by the hypnosis, then to the extent that it was you would disregard such testimony.

Ordinarily the court receives the testimony of witnesses only as to facts to which the witness has particular and direct knowledge. In certain cases, however, where a particular degree of skill or knowledge is required to understand the situation, the law receives the opinion of those deemed to be expert in certain lines. The opinion testimony of an expert can be based on hypothetical questions or based on the expert's observations. You should not consider any opinion at all unless the facts upon which it is based are found by you to be true.

Even though you are permitted to receive the testimony of an expert, you are not bound by such testimony. The law allows you to receive it and consider it, along with all the other evidence in the case.

Evidence is either direct or circumstantial. Direct evidence is that which itself speaks to the issue involved. Indirect or circumstantial evidence is that which by its consistency suggests or implies that a certain claim or theory is true.

Criminal conduct may be proved by circumstantial evidence as well as by direct evidence. However, before you would be authorized to convict on evidence which is entirely circumstantial, such evidence must not only prove the guilt of the accused beyond every reasonable doubt, but it must also

exclude every other reasonable theory except that of guilt.

In other words, if the circumstances in the case are subject to equally reasonable constructions, one indicating guilt and the other innocence, you are obligated under the law to accept that construction indicating innocence.

No conviction should rest upon suspicion, conjecture or the possibility of guilt.

A crime is defined as a violation of a statute of this state in which shall be a union of joint operation of act and intention. Criminal intent is a necessary element of a crime, and the state must prove such intent, just as it must prove every other essential element of the crime.

No person should be found guilty of any crime which is committed by misfortune or accident, where it satisfactorily appears there was no criminal intention.

No one is presumed to act with criminal intention, but you may find such upon a consideration of the words, conduct, demeanor, motive and all other circumstances connected with the offense. You may likewise find a lack of criminal intent upon such a consideration.

Every person is presumed to be of sound mind and discretion and is presumed to intend the natural and probable consequences of his acts. The acts of such a person are presumed to be intentional. These presumptions may be rebutted by any evidence to the contrary.

In this case, the state has contended that the defendant was involved in a similar offense in 1976, and evidence was offered concerning the 1976 occurrence. The court allowed that evidence solely for you to decide whether it might tend to illustrate the defendant's motive, intent or state of mind with respect to the charges for which is is now on trial, and for no other purpose.

Whether the defendant in fact committed such other offense, and if so, whether it illustrates his state of mind in this case, is a matter for you to decide.

In order for any crime to have been committed upon the person of the victim in this case, you must find beyond a reasonable doubt that such crime, if any, was committed upon her before she died.

In count one of the indictment, the defendant is charged with the offense of rape. A person commits rape when he has carnal knowledge of a female forcibly and against her will. Carnal knowledge in rape occurs when there is any penetration, however slight, of the female sex organ by the male sex organ. For such carnal knowledge to constitute the offense of rape, the penetration must have been accomplished by force and against the will and without the consent of the female alleged to have been raped. The offense of rape is not complete if the element of force is lacking in the commission of the sexual act.

In count two of the indictment, the defendant is charged with the offense of aggravated sodomy. A person commits the offense of sodomy when he performs or submits to any sexual act involving the sex organs of one person and the anus of another. A person commits the offense of aggravated sodomy when he commits sodomy with force and against the will of the other person.

In this case, the state must prove beyond a reasonable doubt that the defendant inserted his sex organ into the anus of Evelyn Joy Ludlam with force and against her will in order for there to be a conviction under this count.

In count three of the indictment, the defendant is accused of the offense of false imprisonment. A person commits the offense of false imprisonment when, in violation of the personal liberty of another, he detains such person without legal authority.

In count five of the indictment, the defendant is charged with the offense of murder. A person commits murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being. Express malice is that deliberate intention to kill which is manifested or shown by external circumstances capable of proof.

Malice shall be implied where no considerable provocation appears and where all the circumstances of the killing show an aban-

doned and malignant heart. Malice is an essential element of murder, and it must exist before any homicide can be murder. Malice in its legal sense is not necessarily ill will or hatred. It is the unlawful, deliberate, preconceived intention to kill a human being without justification or excuse, which intention must exist at the time of the killing. If such intention enters the mind of the slayer a moment before he commits the fatal act, that is sufficient.

Members of the jury, you should take the instructions which I have given you in this case and apply them to the facts as you find the facts to be, and arrive at a verdict which speaks the truth. The object of every legal investigation is the discovery of the truth. You are not concerned with the effect or consequence of your verdict. You are only concerned that the speak the truth.

As to each count in the indictment, the four remaining counts, members of the jury, if you believe beyond a reasonable doubt that the defendant is guilty as charged in the indictment, it would be your duty to convict him, and the form of your verdict in that event would be, "We find the defendant guilty."

On the other hand, if you do not believe that the defendant has committed the offenses with which he's charged or any one of them dealing with each particular count, or if you entertain a reasonable doubt as to the defendant's guilt, it would be your duty to acquit him, and in that event the form of your verdict would be, "We find the defendant not guilty."

Whatever your verdict is, members of the jury, one of you as foreperson of the jury should write it out separately as to each count on the back of the indictment. You should then date it and sign it. Then you would notify the bailiff that you have arrived at your verdict, and you will be asked to come back into the courtroom so that your verdict can be published as provided by law.

I ask at this time, please, that the 12 of you on the regular jury panel retire to this jury room. I'm going to ask the two alternates for the time being to retire back here,

I believe, to my office. Any objection to that, for the time being? All right.

(The jury thereupon left the courtroom at 2:28 p.m.)

\* \* \* \* \* \* \*

THE COURT: Does the state have any exceptions to the charge?

MR. FINLAYSON: No, sir, your Honor.

THE COURT: Do you at this time, Mr. Hasty or Mr. Brown?

MR. BROWN: Judge, the only thing that, other than failure to give our requests to charge, that I would make exception to is the judge charged, like a lot of courts do, that the jury must make the witnesses speak the truth; that coupled with the fact that the judge charged the jury that they have a duty to convict if they find that there's not reasonable doubt, I think the combination there would tell the jury they have to believe somebody that they may otherwise decide to disregard entirely, whether or not the person has been impeached.

I think one privilege the jury would have would be to simply disregard somebody's testimony without that person being impeached, and the judge's charge does not give them that option. I would point that out now, but, of course, we don't waive the various other requests. I don't have a list of all of the requests that were not given at this time.

I don't recall one on the wavering mind, if the jury were to say that—

MR. HASTY: Yeah.

MR. BROWN: Was that given? We would reserve our right to any further objection.

THE COURT: I think you may reserve your exceptions. I don't think under the present law you are required to go into any detail as to any problems with the charge; and, as I said, now, we will get a copy of your requests, along with those of the state, marked filed.

Now, do you want to get together and get the evidence to go to the jury?

(The exhibits were thereupon gathered by counsel and the reporter.)

(The exhibits were taken to the jury at 2:43 p.m.)

Now, let me tell you what I have in mind doing with respect to the two alternates, is to continue sequestering them until such time as this jury reaches a verdict.

Now, my impression is that they can be called on to serve in connection with this case up until that time. Once this jury decides the verdict, I think their services are over, even if the jury convicts the defendant. I question whether they would be permitted to serve in an alternate capacity in the sentence phase not having participated in the guilt or innocence. I don't think they could.

MR. DANIEL: The law says the same jury shall consider the penalty as considered the first . . . .