**David Castro PEREZ, Petitioner,**

v.

**Charles D. MARSHALL, Warden, Respondent.**

**No. 94–1666–IEG (POR).**

United States District Court, S.D. California.

Oct. 7, 1996.

Nancy L. Palmieri, Deputy Attorney General and Daniel E. Lungren, Attorney General for the State of California, for respondent.

Stephen R. Scarborough and J. Kerry Bader, Federal Defenders of San Diego, Inc., for petitioner.

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND ORDER DISMISSING PETITION

GONZALEZ, District Judge.

Petitioner, a state prisoner proceeding pro se, has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 9.3(b)(3).

On July 9, 1996, the Magistrate Judge filed a report and recommendation herein which was served on petitioner and which contained notice to petitioner that any objections to the report and recommendation were to be filed within thirty (30) days. On July 29, 1996, petitioner submitted timely objections to the report and recommendation. The Court has considered petitioner's objections.

In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C) and Local Rule 9.3(b)(6), this Court has conducted a *de novo* review of this case. Having carefully reviewed the entire file, and considering the recent opinion in *Lindh v. Murphy*, 96 F.3d 856 (7th Cir.1996) (en banc), the Court finds the report and recommendation to be supported by the record and by proper analysis.

Accordingly, **IT IS HEREBY ORDERED** that the report and recommendation filed July 9, 1996, is adopted in full.

**IT IS SO ORDERED.**

## ORDER GRANTING MOTION TO VACATE EVIDENTIARY HEARING AND REPORT AND RECOMMENDATION RE DENIAL OF PETITION WITH PREJUDICE

PORTER, United States Magistrate Judge.

Petitioner, David Castro Perez, is a California state prisoner. Perez was convicted in state court of assault with a deadly weapon by a prisoner, and possession of a deadly weapon by a prisoner. On October 28, 1994, Perez filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Perez, who filed his federal habeas petition on October 28, 1994, raises two claims. First, Perez claims that the trial court erred by denying his motion to represent himself. Second, Perez claims that the trial court erred by failing to conduct an evidentiary hearing and by denying his motion for new trial on the grounds of jury misconduct.

Presently before the Court is Respondent's motion to vacate the evidentiary hearing that the Court ordered to determine whether Perez' motion to represent himself in state court was made for purposes of delay or for some other reason. Because the Court ordered an evidentiary hearing, Petitioner is currently represented by counsel. As discussed below, the Court grants Respondent's motion to vacate the evidentiary hearing. The Court also recommends that the petition be denied on the merits with prejudice.

### STATEMENT OF THE CASE

On May 16, 1989, Perez was charged with one count of assault with a deadly weapon by a prisoner and one count of possession of a deadly weapon by a prisoner. In addition, an amended information alleged that Perez personally used a deadly weapon and had suffered two serious-felony priors. Clerk's Tr. at 128–29. On January 23, 1990, a jury found Perez guilty of both counts. Clerk's Tr. at 188–89, 271. Before trial, Perez three times moved to represent himself. Those motions were denied and the facts surrounding them are discussed later under this Court's analysis of Perez's claims.

Perez did not testify at his jury trial. Before the jurors' deliberations, the court instructed them that they must draw no inference from the fact that the defendant did not testify and must neither discuss this nor permit it to enter into their deliberations in any way.[1] On March 9, 1990, Perez submitted a motion for a new trial based on juror misconduct. Perez claimed jurors discussed his failure to testify at trial. The motion was heard and denied. The trial court sentenced Perez to state prison for a term of 16 years. Clerk's Tr. 228, 273.

Perez has exhausted his state court remedies as to the claims raised in the instant petition. Answer at 2, ¶ II.

### STATE OF FACTS

Perez and the victim, Angel Rojas, were inmates at Richard J. Donovan State Prison in San Diego. On February 6, 1989, Rojas and Perez were standing outside in the exercise yard. Correctional Officer Frank Ardilla stood in a control booth overlooking the yard. Rojas and Perez engaged in what Officer Ardilla described as a "verbal argument" which "seemed very heated." As Perez and Rojas walked toward the housing unit, Officer Ardilla saw Perez charge at Rojas with his arm uplifted. Rojas tried to defend himself but before he could, Perez struck him in the right side of the neck with an object. Rep.Tr. at 194, 197. Ardilla then saw Rojas holding his neck with his left hand while blood flowed between his fingers. Rep.Tr. at 199. From the window, Ardilla ordered everyone in front of the window to freeze and get down. Everyone complied except for Perez. Perez continued walking. Rep.Tr. at 204. When Perez did not stop, Ardilla went to the gun rack, got a rifle, and aimed it at Perez. Perez then turned and dropped to the ground. At this point, Ardilla directed the other correctional officers to search for weapons in the area around the path in which Perez walked. Rep.Tr. 206, 263–64. A metal detector was used and a weapon was found by an officer in a puddle along the path

Perez had taken. Rep.Tr. 264–65, 267. Correctional officers concluded that the weapon was an inmate manufactured weapon sharpened to a point and made from metal stock. Rep.Tr. 270.

Another weapon was found during a search conducted approximately two hours after the attack. Officer Grace Johnson found an inmate manufactured weapon in a trash can inside the prison. The weapon looked like a screw driver, sharpened to a point. Rep.Tr. at 283. The prosecution's evidence showed the screw driver could not have been used in the attack because all prisoners had been searched before they went inside the building. Officer Johnson explained that prisoners often discard their weapons after an attack because they know the officers will probably conduct a general search. Rep.Tr. at 288.

Rojas was treated immediately after the attack by medical technical assistant Mary Kowinsky. Kowinsky believed Rojas' injury was a puncture wound near the collarbone which was caused by a sharp instrument. Rep.Tr. 299–302.

Perez did not testify at trial. Victim Rojas testified that he was "absolutely" positive the prisoner who attacked him was not Perez. Rep.Tr. 159–163. In rebuttal, the prosecution offered expert testimony establishing the existence of a prison code of silence resulting in few inmates ever naming their attackers for fear of retribution. Rep.Tr. 213–14, 216, 221.

### DISCUSSION

#### Evidentiary Hearing

The Ninth Circuit requires four elements be met in order to invoke the right of self-representation. See *Peters v. Gunn*, 33 F.3d 1190, 1192 (9th Cir.1994). Three of these four factors were met in the underlying state court proceedings. The fourth factor, whether Perez's request to represent himself was made as a delay tactic, however, was not

---

1. The trial court specifically instructed the jury as follows: "It is a constitutional right of the defendant in a criminal trial that he may not be compelled to testify. You must not draw any inference from the fact that the defendant does

not testify. Further, you must neither discuss this matter nor permit it to enter into your deliberations in any way." *People v. Perez*, 4 Cal. App.4th 893, 908 n. 12, 6 Cal.Rptr.2d 141, 149 n. 12 (1992).

specifically addressed in state court. Therefore, an evidentiary hearing was scheduled to determine whether Perez's motion to represent himself was made for purposes of delay or for some other reason. As stated, Respondent moves to vacate that evidentiary hearing on the ground that it is no longer necessary under the new habeas law.

The threshold question then, is which version of § 2254 to apply to this case, the law in effect when the petition was filed or the current version of § 2254. On April 24, 1996, President Clinton signed into law the Antiterrorism and Effective Death Penalty Act of 1996 (Act). Pub.L. No. 104–132, 110 Stat. 1214 (1996). The act amends 28 U.S.C. §§ 2244, 2253, 2254, 2255, Appellate Rule 22, and 21 U.S.C. § 848(q). The law also creates a new chapter 154 in title 28 which provides special habeas corpus procedures in capital cases.

### Retroactivity: New § 2254(d)(1) Applies to Pending Cases

New § 2254(d)(1) provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States ...

In order to decide whether an evidentiary hearing is appropriate or necessary, the Court must first decide whether to apply the habeas law in effect at the time the petition was filed or the recently amended habeas law. *See Landgraf v. USI Film Prod.*, 511 U.S. 244, ——, 114 S.Ct. 1483, 1489, 128 L.Ed.2d 229 (1994). Absent an explicit effective date in the legislation, an act becomes effective on the date it is signed into law by the President. *United States v. Clizer*, 464 F.2d 121, 123 n. 2 (9th Cir.), *cert. denied*, 409 U.S. 1086, 93 S.Ct. 697, 34 L.Ed.2d 673 (1972); *United States v. Bafia*, 949 F.2d 1465, 1480 (7th Cir.1991), *cert. denied*, 504

U.S. 928, 112 S.Ct. 1989, 118 L.Ed.2d 586 (1992); *see also United States v. Ferryman*, 897 F.2d 584, 588–89 (1st Cir.) (stating general presumption that statutes become effective at moment they are signed into law), *cert. denied*, 498 U.S. 830, 111 S.Ct. 90, 112 L.Ed.2d 62 (1990). However, this Court must follow *Landgraf*, 511 U.S. 244, 114 S.Ct. 1483, to determine whether "a federal statute enacted after the events in suit" applies to an existing case. *Id.* at ——, 114 S.Ct. at 1505. In *Landgraf*, the Supreme Court analyzed the applicability of intervening legislation on a pending case. The *Landgraf* analysis posits two axioms concerning the effect of intervening changes in the law. First, "a court is to apply the law in effect at the time it renders its decision." *Id.* at ——, 114 S.Ct. at 1496 (quotation omitted). Second, "retroactivity is not favored in the law." *Id.* (quotation omitted).

To reconcile the tension between these "two seemingly contradictory statements," *id.*, the Court set forth a method to determine the applicability of newly enacted legislation on a pending suit:

When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect.... If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Landgraf*, 511 U.S. at ——, 114 S.Ct. at 1505. "In sum, *Landgraf* mandates that if Congress does not prescribe the scope of a statute, we apply intervening civil legislation to pending cases unless it would operate retroactively." *Lennox v. Evans*, 87 F.3d 431, 432 (10th Cir.1996).

Deciding when a statute has "retroactive effect" is not a simple or mechanical task. *Landgraf*, 511 U.S. at ——, 114 S.Ct. at 1498. When the new statute changes procedural rules or affects the propriety of prospective

relief, application of the new provision to a case filed before the legislation became law does not necessarily amount to retroactive operation of a statute. *Id.* at ——, —— & n. 29, 114 S.Ct. at 1501, 1502 & n. 29. Most importantly, a statute does not operate retroactively merely if it is applied to conduct predating or to a case filed before enactment of the statute. *Id.* at ——, 114 S.Ct. at 1499. Something more is required to raise concerns of statutory retroactivity. As specified by the Supreme Court, a statute has "retroactive effect" when applied to a case filed prior to passage of the new legislation if "it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* at ——, 114 S.Ct. at 1505.

■■■ The amendments relevant in this case appear in § 104 of the Act, which contains neither an effective date provision nor clear language specifying that it applies retroactively.[2] "Consequently, we must apply the new amendments to [Perez' petition] unless to do so would have retroactive effect." *Lennox,* 87 F.3d at 432 (citing *Landgraf,* 511 U.S. at ——, 114 S.Ct. at 1505).

**2.** The only effective date provision specified in Title I of the Act appears in § 107, a newly enacted chapter which provides special procedures for death penalty habeas corpus actions. Section 107(c) states that the death penalty procedures "shall apply to cases pending on or after the date of enactment of this Act." Section 107 is not implicated in this noncapital case. One court—faced with a capital case—has concluded that review of the Act's purpose, structure and legislative history, indicates Congress intended that the noncapital habeas corpus amendments apply to cases pending on or after enactment of the Act, the same time as chapter 154's capital provisions became operative. *Leavitt v. Arave,* 927 F.Supp. 394, 396–98 (D.Idaho 1996). This case is distinguishable from *Leavitt* because Leavitt is seeking relief from his death sentence. *Leavitt,* 927 F.Supp. at 395–96. Thus, chapter 154 applies to Leavitt's case. Here, however, Perez is not facing a death sentence. Hence, chapter 154, by its very terms, does not apply to this case. Given the absence of guiding instructions from Congress, this Court finds that—in the noncapital context—there is no special reason to think that all the diverse provisions of the Act must be treated uniformly for retroactivity purposes. *See Landgraf,* 511 U.S. at ——, 114 S.Ct. at 1505. Rather, this Court, faced with a noncapital case, concludes that by creating an entirely new and separate chapter 154—which contains

### Provision–By–Provision Retroactivity Analysis

The Supreme Court in *Landgraf* did not decide that an act in toto may not apply retroactively; rather, it instructed courts to "evaluate each provision of [an] [a]ct in light of ordinary judicial principles concerning the application of new rules to pending cases and pre-enactment conduct." *Chenault v. United States Postal Serv.,* 37 F.3d 535, 537 (9th Cir.1994) (quoting *Landgraf,* 511 U.S. at ——, 114 S.Ct. at 1505). The dispositive provision at issue here is new § 2254(d)(1). To determine whether applying the new habeas corpus legislation in this matter raises retroactivity concerns, the Court examines the impact of new § 2254(d)(1).

### Act Does Not Impose New Burdens on Parties After the Fact

■■■ "The presumption against statutory retroactivity has consistently been explained by reference to the unfairness of imposing new burdens on persons after the fact." *Landgraf,* 511 U.S. at ——, 114 S.Ct. at 1500. For example, in *Rivers v. Roadway Express Inc.,* 511 U.S. 298, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994), the companion case to

tains "special" rules governing only capital cases—Congress intended capital cases to be treated distinctly and separately from noncapital cases. Although habeas corpus provisions outside chapter 154 can apply in capital cases, the inverse is not true. *See* Act § 107(a), 110 Stat. at 1221 ("CHAPTER 154—SPECIAL HABEAS CORPUS PROCEDURES IN CAPITAL CASES"); *see, e.g., id.* (to be codified at 28 U.S.C. § 2261(a)) ("This chapter shall apply to cases arising under section 2254 brought by prisoners in State custody who are subject to a capital sentence."); *id.,* 110 Stat. at 1222 (to be codified at 28 U.S.C. § 2262) (setting up special procedures regarding staying an "execution date"); *id.,* 110 Stat. at 1223 (to be codified at 28 U.S.C. § 2264(a)) (defining scope of federal review of petitions filed by state prisoners under a "capital sentence"); *id.* (creating special unitary review procedures governing a person under "sentence of death"). In fact, the special procedures Congress created in chapter 154 expressly distinguish capital and noncapital cases. *See, e.g., id.,* 110 Stat. at 1224 (to be codified at 28 U.S.C. § 2266) ("The adjudication of any application under section 2254 that is subject to this chapter, and the adjudication of any motion under section 2255 by a person under sentence of death, shall be given priority by the district court and by the court of appeals over all noncapital matters.").

*Landgraf,* the Supreme Court concluded that "the important new legal obligations § 101 [of the Civil Rights Act of 1991] imposes bring it within the class of laws that are presumptively prospective." *Rivers,* 511 U.S. at ——, 114 S.Ct. at 1515. In part, because § 101 of the Civil Rights Act of 1991 creates liabilities that had no legal existence before the Act was passed, the Supreme Court refused to apply § 101 to preenactment conduct. *Id.* at —— – ——, 114 S.Ct. at 1519–20.

In contrast, section 2254(d)(1) does not create new liabilities. Changing the standard of review governing federal court review of a state court's application of federal law does not impose new burdens on the parties after the fact. A change has a retroactive effect if it is the "type of legal change that would have an impact on private parties' planning." *Landgraf,* 511 U.S. at ——, 114 S.Ct. at 1506. Arguably, Perez might have worked harder at his motion hearing to represent himself in state court if he had known then that he would receive deferential rather than *de novo* federal review. Realistically, however, it is hard to imagine that Perez, a defendant in a criminal case facing the prospect of a long prison sentence, would save his best arguments for federal court, or that he would plan not to do his best at the state court *Faretta* hearing because he relied on the prospect of *de novo* federal review.[3] Accordingly, the Court concludes that the legal change here to the standard of review is not the type that would have an impact on private parties' planning.[4]

### Because Habeas Corpus Provides Prospective Relief, the Act Applies to Pending Cases

■■■■ In addition, when a new law consists of prospective-relief legislation, a court should apply the law in effect at the time it renders its decision, even though that law was enacted after the events that gave rise to the suit. *Id.* at ——, 114 S.Ct. at 1501. In the federal habeas corpus context under § 2254, the state criminal trial and pre- and post-trial motions are the main events, and the habeas petition is a petitioner's collateral prayer for prospective relief from a conviction that the petitioner claims violates the United States Constitution. "The statutes delineating the scope of a state prisoner's habeas corpus action are of the 'prospective-relief' type. The remedial nature of the writ of habeas corpus is well established." *Leavitt v. Arave,* 927 F.Supp. at 398 (D.Idaho 1996) (citing *Peyton v. Rowe,* 391 U.S. 54, 65, 88 S.Ct. 1549, 1555, 20 L.Ed.2d 426 (1968) (holding that state prisoner serving consecutive sentences is "in custody" for purposes of challenging either sentence); *see also Herrera v. Collins,* 506 U.S. 390, 403, 113 S.Ct. 853, 862, 122 L.Ed.2d 203 (1993) (stating that available habeas corpus relief includes "commutation of petitioner's death sentence, new trial or unconditional relief"). Moreover, a petitioner's requested relief is prospective in nature; when a habeas corpus petitioner sues a state official alleging detention in violation of federal law, he usually seeks the prospective remedy of release from custody. *See Peyton,* 391 U.S. at 58, 88 S.Ct. at 1551–52. "Indeed, given the Eleventh Amendment's limitation on the ability of an individual to sue state officials in federal court, the writ's exclusive focus on prospective relief is a constitutional imperative." *Leavitt,* 927 F.Supp. at 398 (citing *Seminole Tribe of Florida v. Florida,* —— U.S. ——, —— n. 17, 116 S.Ct. 1114, 1133 n. 17, 134 L.Ed.2d 252

---

3. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The Court in *Faretta* held that a defendant has the right under the Sixth and Fourteenth Amendment to the U.S. Constitution to waive counsel and represent himself or herself. *Id.* at 835, 95 S.Ct. at 2541. Thus, a *Faretta* motion is a motion to represent oneself.

4. The largest category of cases in which the Supreme Court has "applied the presumption against statutory retroactivity has involved new provisions affecting contractual rights, matters in which predictability and stability are of prime importance." *Landgraf,* 511 U.S. at ——, 114 S.Ct. at 1500. Amending the statutory provisions that govern the writ of habeas corpus does not affect contractual or property rights. Moreover, unlike with contractual and property rights, predictability and stability are not of prime importance with regard to the statutory scheme governing federal habeas proceedings.

(1996), and *id.* at —— —— & n. 62, 116 S.Ct. at 1182–83 & n. 62 (Souter, J., dissenting)). Thus, because habeas corpus petitioners seek prospective relief, the appropriate presumption is that new § 2254(d)(1) applies to this case. *See United States v. 403½ Skyline Drive,* 797 F.Supp. 796, 799 (C.D.Cal. 1992) (retroactive application permitted when act merely affects remedies and does not change substantial right).

■ Although designed to protect rights of constitutional dimension, the statutory provisions defining the writ's operation have never guaranteed a fixed statutory framework. *Leavitt,* 927 F.Supp. at 398–99. Thus, a change to the writ's standard of review regarding questions of law "speak[s] to the power of the court rather than to the rights or obligation of the parties." *Landgraf,* 511 U.S. at ——, 114 S.Ct. at 1502. Accordingly, the new habeas provisions do not have a retroactive effect. *See id.* at ——, 114 S.Ct. at 1501.

### *The Act Affects A Statutory Scheme, Not Vested Rights*

■ If the new law were found to "affect vested rights," *Id.* at ——, 114 S.Ct. at 1499, the Court would presume that the new statute does not apply to pending cases. *Id.* at —— —— ——, 114 S.Ct. at 1499–1501. Here, however, Perez has no "vested right" in a statutory scheme that defines the scope of the prospective habeas relief. *See id.* at —— —— ——, —— n. 37, 114 S.Ct. at 1501–02, 1507 n. 37. Thus, new § 2254(d)(1) does not divest Perez of a vested constitutional right.

First, the nature of the change in the law at issue here is only one of degree: federal court review of a state court's application of federal law still exists; only the standard of review has changed. Second, the extent of the change is open to varying interpretations. From a historical perspective, the change from *de novo* to deferential review is fundamental because the change constitutes a break from the traditional rule; traditionally, federal habeas courts have reviewed legal questions *de novo.* However, viewed from a practical perspective, the change in the standard of review only affects the court's decision-making process, not the rights of the

parties. Third, the degree of connection between the operation of the new rule and a relevant past event is, at best, highly attenuated. For example, it would defy common sense to assume that Perez would have litigated his *Faretta* motion any differently because he anticipated *de novo* federal review as opposed to new § 2254(d)(1)'s deferential standard of review.

### *No Manifest Injustice in Applying § 2254(d)(1) to Pending Cases*

■ Finally, the Court finds no injustice in applying new § 2254(d)(1) in this case. In *Bradley v. School Bd. of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Supreme Court reinstated an award of attorney's fees based on the presumption that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in *manifest injustice . . . .*" *Id.* at 711, 94 S.Ct. at 2016 (emphasis added). The Court listed three factors to consider when determining if retroactive application would result in manifest injustice: (1) the nature and identity of the parties, (2) the nature of the rights affected, and (3) the nature of the impact of the change of law on those rights. *Id.* at 717, 94 S.Ct. at 2019. Applying these factors, the Court in *Bradley* found no injustice in applying the attorney's fees provision retroactively. *Id.* at 720–21, 94 S.Ct. at 2020–21.

Applying the *Bradley* test here, the Court finds that the first factor weighs in favor of retrospective application. Because this is a case between individuals (i.e., a state prisoner and the warden of the prison in which petitioner is incarcerated), it is not a case of "great national concern." *See id.* at 718–19, 94 S.Ct. at 2019–20. The second factor derives from *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 471–72, 102 L.Ed.2d 493 (1988), and its progeny, in which the Supreme Court prohibited retrospective application where doing so "would infringe upon or deprive a person of a right that had matured or become unconditional." *See Bradley,* 416 U.S. at 720, 94 S.Ct. at 2020 (citing *Greene v. United States,* 376 U.S. 149, 160, 84 S.Ct. 615, 621–22, 11 L.Ed.2d 576 (1964); *Claridge Apartments v. Commission-*

er, 323 U.S. 141, 164, 65 S.Ct. 172, 185, 89 L.Ed. 139 (1944); *Union Pac. R.R. v. Laramie Stock Yards,* 231 U.S. 190, 199, 34 S.Ct. 101, 102–03, 58 L.Ed. 179 (1913)). Here, changing the standard of review does not infringe upon or deprive petitioner of a right that had matured or become unconditional; instead, it simply changes the scope of the Court's review. The third factor looks to whether retrospective application would impose "new and unanticipated obligations" on a party "without notice and an opportunity to be heard." *See id.* at 720, 94 S.Ct. at 2021. As discussed above, retrospective application of new § 2254(d)(1)'s deferential standard of review does not impose new and unanticipated obligations on Perez. Accordingly, having applied these factors to this case, the Court finds no injustice in applying § 2254(d)(1)'s deferential standard of review to cases pending on or after April 24, 1996. *See id.* at 720–21, 94 S.Ct. at 2020–21.

## Petitioner's Constitutional Challenges Fail

Perez claims that application of new § 2254(d)(1)'s deferential standard of review to this case would violated the Constitution of the United States in three ways. First, Perez argues that interpreting new § 2254(d)(1) to require substantive federal court deference to state legal decisions would violate the Article III principle espoused in *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803). Second, Perez argues that application of new § 2254(d)(1) would violate his due process rights. Third, Perez claims that application of new § 2254(d)(1) would have the effect of "suspending" the privilege of the writ of habeas corpus in violation of the United States Constitution, Article I, section 9. *See* Pet'r's Statement of Facts and P. & A. in Supp. of Def.'s Opp'n to Resp't's Mot. at 6; Pet'r's Supp.Mem.P. & A. at 9–14.

A party challenging the constitutionality of a statute bears a heavy burden of proof. *New York State Club Ass'n v. City of New York,* 487 U.S. 1, 108 S.Ct. 2225, 101 L.Ed.2d 1 (1988). The Act comes to the courts with a presumption of constitutionality, and the burden is on the Perez to establish the Act violates the Constitution. *See Usery v. Turner Elkhorn Mining,* 428 U.S.

1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976). Perez has failed to carry his burden.

First, the Court rejects Perez' claim that interpreting new § 2254(d)(1) to require substantive federal court deference to state legal decisions would violate the Article III principle espoused in *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803), that it is emphatically the province of the judiciary to say what the law is. Congress has not usurped the Court's judicial function. Under the Act, federal habeas courts are not required to "rubber stamp" state court legal decisions. If a state court's application of clearly established federal law is unreasonable, then a federal habeas court has the power to grant the writ. Therefore, Perez' first constitutional argument fails.

Second, the Court rejects Petitioner's claim that application of new § 2254(d)(1)'s standard against him would violate his due process rights. Citing *Cooper v. Oklahoma,* —— U.S. ——, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996), Perez argues that new § 2254(d) offends principles of justice so rooted in the traditions and conscience of our people as to be ranked fundamental because it deprives all persons of a long-established forum for the vindication of constitutional rights. As stated above, Perez is not denied a forum for the vindication of his constitutional rights. The Court still has the power to issue the writ, albeit under more tightly circumscribed conditions. The Due Process Clauses in the Fifth and Fourteenth Amendments protect interests of fair notice and reliance. As discussed above, however, Perez has no reasonable reliance interest in a *de novo* standard of review. Accordingly, the Court rejects Perez's due process argument.

Third, the Court rejects Petitioner's claim that application of new § 2254(d)(1)'s standard against him would have the effect of "suspending" the privilege of the writ of habeas corpus in violation of the United States Constitution, Article I, section 9. The suspension clause in Article I of the federal constitution states: "[T]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may

require it." U.S. Const. art. I, § 9, cl. 2. Without showing *how* new § 2254(d)(1) violates the suspension clause, Petitioner's suspension clause claim cannot prevail. In *Felker v. Turpin*, —— U.S. ——, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996), the United States Supreme Court stated: "The added restrictions which [§ 106 of] the Act places on second habeas petitions are well within the compass of th[e] evolutionary process [called the abuse of the writ doctrine], and we hold that [the added restrictions] do not amount to a 'suspension' of the writ contrary to Article I, § 9." *Id.* at ——, 116 S.Ct. at 2340 (citing *Swain v. Pressley*, 430 U.S. 372, 385, 97 S.Ct. 1224, 1231–32, 51 L.Ed.2d 411 (1977) (Burger, C.J., concurring)).[5] Further, Perez himself admits that the writ is not literally suspended:

> Today, as in 1867, a district court "shall entertain" and grant an application for a writ if the applicant shows that he or she is "in custody on [sic] violation of the Constitution ... of the United States." 28 U.S.C. § 2241(c)(3), 2254(a) (unchanged by the Act). [¶] It is only the *manner* in which a federal district court adjudicates a habeas Petitioner's constitutional claim that has changed.

Pet'r's Supp.Mem.P. & A. at 6.

Congress has not ousted federal court jurisdiction in habeas cases; instead, Congress has changed the scope of review. "[J]udgments about the proper scope of the writ are 'normally for Congress to make,' " *Felker v. Turpin*, —— U.S. at ——, 116 S.Ct. at 2340 (quoting *Lonchar v. Thomas*, —— U.S. ——, ——, 116 S.Ct. 1293, 1298, 134 L.Ed.2d 440 (1996)); *see also Palmore v. United States*, 411 U.S. 389, 401, 93 S.Ct. 1670, 1678, 36 L.Ed.2d 342 (1973) ("[T]he judicial power of the United States ... is (except in enumerated instances, applicable exclusively to [the Supreme Court]) dependent for its distribution and organization, and for the modes of its exercise, entirely upon the action of Con-

gress, who possess the sole power of creating the tribunals (inferior to the Supreme Court) ... and of investing them with jurisdiction either limited, concurrent, or exclusive, and of withholding jurisdiction from them in the exact degrees and character which to Congress may seem proper for the public good."). Therefore, the Court rejects Perez' claim that new § 2254(d)(1)'s deferential standard constitutes a suspension of the writ. Congress has not suspended the Court's ability to decide § 2254 cases.

In sum, having found new § 2254(d)(1) does not have a retroactive effect and having rejected Perez' constitutional challenges, the Court concludes that new § 2254(d)(1) applies to this case.

### New Deferential Standard of Review

Before the Act, conclusions of law in state criminal proceedings were not binding on federal courts. *Brown v. Allen*, 344 U.S. 443, 506, 73 S.Ct. 437, 446, 97 L.Ed. 469 (1953) ("State adjudication of questions of law cannot, under the habeas corpus statute, be accepted as binding. It is precisely these questions that the federal judge is commanded to decide.").

The 1996 Act changes the standard of federal habeas corpus review by eliminating *de novo* review of legal and mixed legal-factual claims. For the reasons discussed below, the Court finds that new § 2254(d)(1), which appears in § 104 of the Act, replaces the federal court's plenary review of a state's application of federal law with a deferential standard, which when applied in this case renders the evidentiary hearing moot.

Under the old standard of review, the Ninth Circuit recognized that if a federal district court in a habeas proceedings applies a different standard of law than that applied by a state supreme court an "odd discontinuity" in the applicable law may result. *Burks v. Borg*, 27 F.3d 1424, 1428 n. 2 (9th Cir.

---

**5.** *See also* Wayne R. LaFave & Jerold H. Isreal, Criminal Procedure § 28.2 (2d ed. 1992); *Fay v. Noia*, 372 U.S. 391, 406, 83 S.Ct. 822, 831, 9 L.Ed.2d 837 (1963) ("We need not pause to consider whether it was the Framers' understanding that congressional refusal to permit the federal courts to accord the writ its full common-law scope as we have described it might constitute an unconstitutional suspension of the privilege of the writ."); Liebman & Hertz, *supra*, § 2.4e; Josephine R. Potuto, Prisoner Collateral Attacks: Federal Habeas Corpus and Federal Prisoner Motion Practice, § 1:4 (1991); Larry W. Yackle, Postconviction Remedies § 17 (1981 & Supp.1995).

1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 762, 1122, 130 L.Ed.2d 660, 1085 (1995).

After the Act, however, new 28 U.S.C. § 2254(d)(1) states that an application for a writ of habeas corpus on behalf of a state prisoner shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, *as determined by the Supreme Court of the United States.*" Act § 104(3), 110 Stat. at 1219 (to be codified at 28 U.S.C. § 2254(d)(1)) (emphasis added).

Perez argues that use of the words "contrary to law" and the Act's legislative history indicate that even under new § 2254(d)(1), the court has *de novo* review of a state court's application of federal law. Pet'r's Supp.Mem.P. & A. at 5–9. The Court concludes, however, that the language of new § 2254(d)(1), on its face, clearly expresses the congressional intent, to create a more deferential standard of review. "In interpreting a federal statute, we seek to determine the intent of Congress. The primary indication of that intent is the language of the statute. It is only if the language is unclear that we refer to legislative history as an aid to the statutory interpretation." *United States v. Aguilar,* 21 F.3d 1475, 1480 (9th Cir.1994), *aff'd in part and rev'd in part,* —— U.S. ——, 115 S.Ct. 2357, 132 L.Ed.2d 520 (1995); *see Blum v. Stenson,* 465 U.S. 886, 896, 104 S.Ct. 1541, 1547–48, 79 L.Ed.2d 891 (1984); *United States v. Koyomejian,* 970 F.2d 536, 543 (9th Cir.) (Kozinski, J., concurring), *cert. denied,* 506 U.S. 1005, 113 S.Ct. 617, 121 L.Ed.2d 550 (1992); *United States v. Behnezhad,* 907 F.2d 896 (9th Cir.1990); *Haynes v. United States,* 891 F.2d 235, 238 (9th Cir.1989); *see also* SUTHERLAND STAT. CONST. § 46.01 (5th ed. 1992 & Supp.1996) (stating that there is no safer nor better settled canon of statutory interpretation than that when language is clear and unambiguous it must be held to mean what is plainly expressed).

New § 2254(d)(1) clearly creates a more deferential standard of review. The new provision dictates that courts cannot grant the writ unless state court adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law. Section 2254(d)(1) also limits "clearly established Federal law," to law which has been determined by the Supreme Court of the United States. Accordingly, this Court rejects Perez' argument that new § 2254(d) still allows *de novo* review.

### Evidentiary Hearing Vacated

Because new § 2254(d)(1) applies to this case, the Court concludes, for the reasons stated below, that there is no longer a need for an evidentiary hearing to determine whether Perez' motion to represent himself was made for purposes of delay. Accordingly, as this Court ruled in open court on July 9, 1996, Respondent's motion to vacate the evidentiary hearing is **GRANTED.**

### RIGHT TO SELF–REPRESENTATION

Perez claims that he requested to represent himself on at least six occasions, and that the trial court erred in denying his requests. The Court's review of the record indicates that Perez made three requests for self-representation: (1) a motion filed with the court on August 7, 1989, which was entitled "Motion for Substitution of Counsel;" (2) a motion filed September 29, 1989, entitled "Faretta Motion;" and (3) an oral request made on January 11, 1990, minutes before Petitioner's trial was to begin.

Petitioner is correct in asserting that the right to self-representation is guaranteed by the Sixth Amendment. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

#### *Motion of August 7, 1989*

On August 7, 1989, Perez—in a "Substitution of Counsel" motion—requested new counsel, or in the alternative, new co-counsel to assist Petitioner in representing himself. Because the trial court granted his primary request for substitute counsel, this Court need not reach the question of whether denying his alternative request to represent himself with appointed co-counsel was improper. However, the Court notes that al-

though a criminal "defendant has the right to represent himself or herself pro se or to be represented by an attorney," *United States v. Olano,* 62 F.3d 1180, 1193 (9th Cir.1995) (citing *United States v. Halbert,* 640 F.2d 1000, 1009 (9th Cir.1981) (per curiam)), he or she " 'does not have a constitutional right to "hybrid" representation.' " *Id.* (quoting *United States v. Kienenberger,* 13 F.3d 1354, 1356 (9th Cir.1994)); *see McKaskle v. Wiggins,* 465 U.S. 168, 183, 104 S.Ct. 944, 953–54, 79 L.Ed.2d 122 (1984); *United States v. Oakey,* 853 F.2d 551, 552–54 (7th Cir.1988), *cert. denied,* 488 U.S. 1033, 109 S.Ct. 846, 102 L.Ed.2d 977 (1989). Moreover, he or she "has no absolute right to serve as co-counsel after electing to be represented by an attorney." *Olano,* 62 F.3d at 1193. Perez' request to represent himself with co-counsel was equivocal because a pro se defendant does not have a constitutional right to such "hybrid" representation. *McKaskle,* 465 U.S. at 183, 104 S.Ct. at 953–54; *Adams v. Carroll,* 875 F.2d 1441, 1444 (9th Cir.1989).

### *Motion of September 29, 1989*

■ On September 19, 1989, Perez filed a *Faretta* motion with the court. In the motion, Perez presented a clear request to represent himself, however, in the motion hearing, the trial court found that what the defendant sought was a modification of his relationship with his attorney. The court, in hearing defendant's *Faretta* motion, was bound to inquire into the circumstances of defendant's request to determine whether he was waiving his right to counsel knowingly and intelligently. *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541. Because Perez expressed his desire to modify the relationship with his attorney, Clerk's Tr. at 244, it is reasonable to conclude that this request to represent himself was equivocal. Petitioner offers no explanation or evidence to contradict the finding of the trial court at this hearing.

■ A request for self-representation is unequivocal when the defendant has made an explicit choice between the right to counsel and the right to self-representation. *Adams,* 875 F.2d at 1444. If the defendant equivocates, he is presumed to have requested the assistance of counsel. *Id.* If a defendant's motion is ambiguous, and surrounding circumstances suggested that it is a motion to substitute counsel rather than proceed pro se, then the court will construe the request as a request for substitution of counsel. *United States v. Weisz,* 718 F.2d 413, 426–28 (D.C.Cir.1983), *cert. denied,* 465 U.S. 1027, 1034, 104 S.Ct. 1285, 1305, 79 L.Ed.2d 688, 704 (1984). In *Weisz,* the defendant had submitted a motion for substitution of counsel at the same time as a motion for self-representation, the D.C. Court of Appeals concluded that the defendant had made an equivocal request when considering the filing of both motions together.

■ Here, the trial court found at the September 29, 1989 hearing that Petitioner did not knowingly and voluntarily request to represent himself; rather, he only sought to modify his relationship with his attorney, Clerk's Tr. at 144. The Court finds no constitutional error on the part of the trial court. Defendants are permitted to exercise their right to represent themselves only if they execute a valid waiver of their right to the assistance of counsel; that is, only if they knowingly and intelligently relinquish the benefits of counsel. *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541; *Weisz,* 718 F.2d at 425.

### *Oral Request of January 11, 1990*

After Petitioner's September 19, 1989 *Faretta* motion, the court received three more motions requesting substitution of counsel. A *Marsden* motion was filed with the court on October 12, 1989; [6] the motion was considered and denied. The motion made no reference to self-representation in any manner. Another *Marsden* motion was filed October 25, 1989; again, no reference to self-representation. The motion was heard and granted. A new attorney, Jack Levine, was ap-

---

**6.** *People v. Marsden,* 2 Cal.3d 118, 84 Cal.Rptr. 156, 465 P.2d 44 (1970). The Court in *Marsden* held that a defendant represented by appointed counsel or the public defender may request that the court discharge the attorney and substitute new counsel if the defendant's right to counsel would be substantially impaired by continuing with the original attorney. *Id.* at 123, 84 Cal. Rptr. 156, 465 P.2d 44. Thus, a *Marsden* motion is a motion for substitution of counsel.

pointed to represent Petitioner. On January 10, 1990, the day before the trial, the court received another motion for substitution of counsel. The motion was heard the next morning on January 11, 1990, before Petitioner's trial was scheduled to begin. The motion was denied. Again, the record shows that there was no request by Petitioner to represent himself at the time.

That same day, January 11, 1990, moments before the jury was to be brought in, Perez requested to represent himself. The exchange between Perez, his attorney, and the court is included below:

"The Court: The record should indicate that I have returned to the bench without the jury panel being called in response to a message that I received before the panel could get through the door. What was that message, Mr. Levine?

"Mr. Levine: Message was Mr. Perez indicated to me he wanted to make a motion to go pro per.

"The Court: It is my understanding that there was a Marsden hearing in this matter within the last few days, was there not?

"Mr. Levine: We didn't address the issue of pro per.

"The Court: I understand you did not. When was that Marsden hearing?

"Mr. Levine: I think it was yesterday in front of Judge Revak.

"The Court: That's what I thought. [¶] Is Mr. Perez prepared to go to trial this afternoon pro per?

"Mr. Levine: May I ask him?

"The Court: Yes.

"Mr. Levine: Defendant—He indicates he's not.

"The Court: In that case, the motion is untimely. I will not entertain it. [¶] The Bailiff is directed to bring in the jury panel.

"Mr. Levine: Judge, Mr. Perez would like to address you.

"The Defendant: Can I address the court, your honor?

"The Court: No, I think not. You—

"The Defendant: If I stipulate for the record—

"The Court: These games have gone on long enough. You didn't make this motion yesterday when you found out that Mr. Levine was not going to be relieved. The necessity would be—and, you know, we have had motions for continuances on every ground, every which way, and that's what this is. I'm not going to continue the case. I'm not going to allow a substitution of counsel, and there's therefore no reason for me to listen to you at this point. [¶] We have now come to the moment of truth. There is a jury panel in the hallway, and we are in session.... [¶] Get the jury.

"The Defendant: Your honor—

"Mr. Levine: Judge—

"The Court: Get the jury. [¶] And remember Mr. Perez, that this is your jury. As soon as they start coming through this doorway—

"Mr. Levine: He wants to proceed by himself, your honor. He's says he's ready to do that.

"The Defendant: I want to speak to the Judge.

"The Court: No, he's not ready to do that. The motion is denied."

Rep.Tr. 59–61; *People v. Perez*, 4 Cal. App.4th 893, 901–02, 6 Cal.Rptr.2d 141, 145 (1992).

▬▬ As he did in the state courts, Perez contends the court erred in ruling his self-representation motion was untimely and in failing to inquire into his reasons for requesting pro per status. The United States Court of Appeals for the Ninth Circuit has held that a request to proceed pro se is timely, as a matter of law, if it is made before meaningful trial proceedings have begun or before the jury has been impaneled, unless the request is a delay tactic. *Armant v. Marquez*, 772 F.2d 552, 555 (9th Cir.1985) (finding that petitioner's request to represent himself was timely, since request came before jury was empaneled, and it was not a delay tactic), *cert. denied*, 475 U.S. 1099, 106 S.Ct. 1502, 89 L.Ed.2d 902 (1986); *Fritz v. Spalding*, 682 F.2d 782, 784 (9th Cir.1982)

("[A] motion to proceed pro se is timely if made before the jury is empaneled, unless it is shown to be a tactic to secure delay." (citation omitted)); *Maxwell v. Sumner,* 673 F.2d 1031, 1036 (9th Cir.) (finding appellee's request to proceed pro se timely as a matter of law because it was made before jury selection and it was not made as a delay tactic), *cert. denied,* 459 U.S. 976, 103 S.Ct. 313, 74 L.Ed.2d 291 (1982). In assessing whether the purpose of a request is dilatory in nature, the trial court may consider the effect of the delay. *Fritz,* 682 F.2d at 784. The court must also examine the events preceding the motion in order to determine whether the defendant made the motion in good-faith and whether the defendant could have asserted the right earlier. *Id.* at 784–85.

Under the statutory federal habeas corpus provisions as they read before April 24, 1996, this Court would have examined Perez's assertion of his *Faretta* right under the framework of *Fritz.* However, because this Court finds that the new law applies, the Court looks to clearly established federal law *as determined by the United States Supreme Court* to determine whether the trial court's application of federal law was "unreasonable." Act § 104(3), 110 Stat. at 1219 (to be codified at 28 U.S.C. § 2254(d)(1)).

### Application of New § 2254(d)(1)

In *People v. Burton,* 48 Cal.3d 843, 854, 258 Cal.Rptr. 184, 771 P.2d 1270 (1989), *cert. denied,* 494 U.S. 1039, 110 S.Ct. 1502, 108 L.Ed.2d 637 (1990), the defendant argued that the California Supreme Court should follow the "federal rule," which is that a motion for self-representation is normally timely as a matter of law if made before the jury is impaneled, so that the motion must be granted unless it is shown that the motion is made for the purpose of delay. *Armant,* 772 F.2d at 555; *Fritz,* 682 F.2d at 784; *Maxwell,* 673 F.2d at 1036; *Chapman v. United States,* 553 F.2d 886, 894 (5th Cir.1977); *United States v. Dougherty,* 473 F.2d 1113, 1124 (D.C.Cir.1972); *United States ex rel. Maldonado v. Denno,* 348 F.2d 12, 16 (2d Cir.1965); *cf. Robards v. Rees,* 789 F.2d 379,

383–84 (6th Cir.1986) (suggesting that motion made on day of trial is within court's discretion to deny if accompanied by motion for continuance.) Recognizing that the authority of the federal courts of appeals—although entitled to great weight—are not binding precedent on it, the California Supreme Court decided not to follow the federal rule stated above. *Burton,* 48 Cal.3d at 845, 258 Cal.Rptr. 184, 771 P.2d 1270.[7]

In rejecting the federal rule, the California Supreme Court stated: "The federal rule, though it calls motions timely until the jury is impaneled, may in practice differ little from our own rule." *Id.* Under the federal rule, it is within the court's discretion to deny a motion made before the jury is impaneled only if the court finds the motion is made for the purpose of delay. *Fritz,* 682 F.2d at 784. The relevant difference between the federal rule and the rule in California is that California places the burden on the defendant to explain his delay when he makes the motion on the eve of trial. The California Supreme Court found the federal rule too rigid in circumscribing the discretion of the trial court and thus decided to adhere to the California rule. *Burton,* 48 Cal.3d at 854, 258 Cal.Rptr. 184, 771 P.2d 1270.

In light of *People v. Burton* and *Faretta,* this Court cannot say that the state trial court's denial of Perez' motion to represent himself "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, *as determined by the Supreme Court of the United States.*" Act § 104(3), 110 Stat. at 1219 (to be codified at 28 U.S.C. § 2254(d)(1)) (emphasis added). The California Supreme Court was well aware of the "federal rule." Because the California Supreme court rejected the federal rule as too rigid, this Court cannot say that the state trial court was unreasonable in following the example of the California Supreme Court.

More importantly, *Faretta* itself guarantees a criminal defendant's Sixth Amendment right to represent himself, but does not dictate that a self-representation motion made

---

**7.** The California Supreme Court is not alone. In *Russell v. State,* 270 Ind. 55, 383 N.E.2d 309 (1978), the Supreme Court of Indiana also reject-ed a bright line rule that the assertion of the right to self-representation is timely if made before the jury is impaneled. *Id.* 383 N.E.2d at 314.

before the jury is impaneled be granted unless the motion is made as a delay tactic. In this case, *Faretta* constitutes the "clearly established Federal law, as determined by the Supreme Court of the United States," of which new § 2254(d)(1) speaks. Looking to *Faretta*, the Court cannot say the state trial court's application of *Faretta* was "unreasonable." Accordingly, under the deferential standard announced in new § 2254(d)(1), the Court recommends that Perez's first ground for relief be denied.

### Jury Misconduct Claim

Petitioner claims that the trial court erred in denying his motion for new trial on the grounds of juror misconduct. He also claims that the state court was required to conduct an evidentiary hearing.

 These claims are based on one or more jurors' discussion of Petitioner's failure to testify on his own behalf. Perez' claims regarding juror misconduct are cognizable on habeas to the extent he argues he was denied a fair trial. *See Jeffries v. Blodgett*, 5 F.3d 1180, 1189–90 (9th Cir.1993), *cert. denied*, 510 U.S. 1191, 114 S.Ct. 1294, 127 L.Ed.2d 647 (1994) (question on habeas is whether juror misconduct deprived defendant of his or her right to fair trial). To obtain habeas relief on allegations of juror misconduct, "petitioners must now show that the alleged error had a substantial and injurious effect or influence in determining the jury's verdict." *Jeffries*, 5 F.3d at 1190 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–39, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993)).

On September 22, 1992, San Diego Superior Court Judge Richard M. Murphy denied Perez' motion for an evidentiary hearing and for a new trial based on jury misconduct. Clerk's Tr. at 123. Judge Murphy denied the motion for an evidentiary hearing because he found there were no material disputed issues of fact.

 Petitioner has failed to show he could have benefited from an evidentiary hearing. Assuming, however, that the trial court should have afforded Perez an evidentiary hearing,[8] the Court concludes that the decision to disallow an evidentiary hearing was not an error of constitutional magnitude requiring relief on habeas.

After reviewing seven declarations submitted by the prosecution, Clerk's Tr. at 106–113, and the defense, Clerk's Tr. at 94–99, Judge Murphy concluded that the jurors' discussion of Perez' failure to testify amounted to jury misconduct. Because the discussion ended when the presiding juror told the jury that they could not consider or discuss Perez' failure to testify, Clerk's Tr. at 106, 112, however, Judge Murphy concluded that the prosecution had rebutted the presumption of prejudice. Clerk's Tr. at 123. Judge Murphy also concluded that a substantial likelihood did not exist that the vote of one or more jurors was influenced by exposure to jury misconduct.

Here, the Court finds no evidence or suggestion that the affidavits from the jurors are lacking in credibility. Further, this Court finds no material disagreement on the facts relayed in the affidavits, even given the

---

8. Notably, an evidentiary hearing could offer no more relevant information than is already before the Court and that would be permitted. Containing substantially similar facts to those at hand, the Fifth Circuit in *Cunningham v. United States*, 356 F.2d 454 (5th Cir.) (per curiam), *cert. denied*, 384 U.S. 952, 86 S.Ct. 1573, 16 L.Ed.2d 548 (1966), upheld the trial court's refusal to allow examination of jurors regarding whether they had considered the defendant's failure to testify in his own behalf. One of the jurors had submitted an affidavit indicating this may have been considered by the jury in determining the defendant's guilt. The Fifth Circuit said the trial court's ruling was correct since the case fits within the well-settled rule that a juror will not be heard to impeach his own verdict. *Id.* at 455 (citing *McDonald v. Pless*, 238 U.S. 264, 35 S.Ct.

783, 59 L.Ed. 1300 (1915)); *United States v. DiCarlo*, 575 F.2d 952, 960 (1st Cir.), *cert. denied*, 439 U.S. 834, 99 S.Ct. 115, 58 L.Ed.2d 129 (1978); *Davis v. United States*, 47 F.2d 1071, 1072 (5th Cir.), *cert. denied*, 284 U.S. 646, 52 S.Ct. 25, 76 L.Ed. 549 (1931); *United States v. Pavon*, 618 F.Supp. 1245, 1246–47 (S.D.Fla. 1985), *aff'd*, 802 F.2d 1397 (11th Cir.1986). A hearing on the issue of jury misconduct is limited to ascertaining the extent, if any, that jurors discussed prejudicial extrinsic evidence or other circumstances surrounding the breach. Courts should not investigate the subjective effects of any such breach upon the jurors. *Jeffries v. Blodgett*, 5 F.3d 1180, 1191 (9th Cir.1993), *cert. denied*, 510 U.S. 1191, 114 S.Ct. 1294, 127 L.Ed.2d 647 (1994).

range of time (5 to 10 minutes) stated among the various jurors regarding the length of time they discussed the Petitioner's failure to testify. Therefore, the Court holds that Perez has failed to make a showing to require an evidentiary hearing as a matter of due process.

The trial court was correct in concluding that it was improper for the jury to consider Perez' failure to testify. Thus, this Court must determine whether "the error had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* 507 U.S. at 637, 113 S.Ct. at 1722. The Court finds the discussion of Perez' failure to testify had no substantial and injurious effect or influence in determining the jury's verdict. The facts presented in the affidavits presented by the prosecution sufficiently rebut the presumption of prejudice. Juror Bert Levine's affidavit submitted by the prosecution states:

> I, Bert Levine, declare: [¶] I was a juror in the case of *People v. David Perez.* I participated in and recall the jury deliberations. [¶] During deliberations, for about five minutes, some of the jurors discussed the defendant's failure to testify. This discussion primarily consisted of these jurors mentioning, without elaboration, that the defendant did not testify. To my knowledge, no juror said the defendant's failure to testify was a presumption of guilt.

Clerk's Tr. 108.

According to presiding juror, Daniel Carr, the above discussion ended when the foreman explained to the jury that they could not discuss or consider the defendant's failure to testify. After the foreman made this instruction, the subject was not mentioned again. His affidavit states:

> I, Daniel Carr, declare: [¶] I was the foreman of the jurors in the case of *People v. David Perez.* Although in general I only vaguely recall the jury deliberations, I do recall the following: [¶] At the beginning of the deliberations, one or more of the jury posed the question, "Why didn't the defendant testify?" In response, I said the jury could not discuss the defendant's failure to testify. Thereafter, to my knowledge, none of the jurors discussed this subject. To my knowledge, no juror said that the defendant's failure to testify was a presumption of guilt.

Clerk's Tr. 106–07.

Assuming that the discussion by the jury of Petitioner's failure to testify constituted jury misconduct, the Court concludes that the prosecution sufficiently rebutted the presumption of prejudice to the defendant by presenting evidence that the jury discussed the subject for a small amount of time and that they were properly instructed by the foreman that they could not discuss this matter. *See Thompson v. Borg,* 74 F.3d 1571, 1574 (1996) (if defect adequately cured no actual prejudice results, error is harmless, and petitioner is not entitled to writ).

In sum, the Court finds that the affidavits supporting the allegations contained information sufficient to rebut the presumption of prejudice. Based on that finding, and the lack of disputed facts, the Court concludes, as did the trial court, that an evidentiary hearing was not necessary. Moreover, after considering the evidence in this case, the Court finds that the jury would have convicted Perez regardless of the brief discussion of his failure to testify. *Brecht,* 507 U.S. at 637, 113 S.Ct. at 1722. As such, the Court recommends denial of this ground for relief.

## CONCLUSION

For the reasons stated above, the evidentiary hearing is **VACATED** as moot.

## RECOMMENDATION

After a thorough review of the record in this matter, the undersigned Magistrate Judge recommends that the Petition for Writ of Habeas Corpus be **DENIED** with prejudice. This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than *July 29, 1996,* any party to this action may file written objections with the Court and serve a copy on all parties. The document should be

captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objections shall be filed with the court and served on all parties no later than *August 12, 1996*. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.