Richard A. LEAVITT, Petitioner,

v.

A.J. ARAVE, Warden, et al., Respondents.

Civil No. 93–0024–S–BLW.

United States District Court,
D. Idaho.

May 31, 1996.

David Z. Nevin, Nevin, Kofoed & Herzfeld, Boise, Idaho, and Andrew Parnes, Ketchum, Idaho, for petitioner.

Lynn E. Thomas, Solicitor General, Boise, Idaho, for respondent.

## MEMORANDUM DECISION AND ORDER

WINMILL, District Judge.

By an order issued April 26, 1996, the court requested briefing on the application of Title I of the Anti–Terrorism and Effective Death Penalty Act of 1996 ("the Act") to state prisoner Richard A. Leavitt's petition for writ of habeas corpus. Leavitt, whose case has been pending in the federal district court since January 22, 1993, is seeking habeas corpus relief from his first degree murder conviction and sentence to death.

The Act, which President Clinton signed into law on April 24, 1996, significantly alters the statutory framework that governs the availability of habeas corpus relief. Sections 101, 102, 104 and 106 of Title I amend existing statutory provisions 28 U.S.C. §§ 2244, 2253 and 2254 ("the amendments") that control the federal courts' consideration of any state prisoner's petition for writ of habeas corpus. Section 107, on the other hand, creates a new chapter 154 under Title 28 of the United States Code ("chapter 154"), and establishes special habeas corpus procedures applicable to capital cases originating in states that comply with the new chapter's prescribed mechanism for appointment and funding of counsel.

Because of the Act's potential to alter the standards controlling habeas corpus relief, the court found it advisable to determine at

the outset whether and to what extent the Act applies to this pending case. It is not the court's intention at this juncture to address, or decide, the constitutionality of any provision contained in the Act. The court's only objective at this stage of the litigation is to identify the law that governs the petitioner's habeas action so that the parties might focus their briefing on the relevant issues.

The court recognizes that an alternative to its present course is to address each provision of the Act piecemeal as it becomes an issue in the case. However, as explained more fully below, the court believes that the analysis relevant to determining the application of any provision of the Act, pertains equally to the Act as a whole. Finally, the court does not understand either party to argue that at the time of the petitioner's state proceedings the State of Idaho had in place procedures sufficient to meet the requirements of the new chapter 154. Accordingly, the court will discuss the provisions contained in chapter 154 only to the extent they shed light on the application of the newly amended statutes to the pending habeas action.

## DISCUSSION

■ The United States Supreme Court recently articulated a three-part test to aid a court in determining whether "a federal statute enacted after the events in suit" applies to an existing case. *Landgraf v. USI Film Prod.*, 511 U.S. 244, ——, 114 S.Ct. 1483, 1505, 128 L.Ed.2d 229 (1994). Under *Landgraf*, "the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach." *Id.* Where Congress has made its intent clear, it governs. *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 837, 110 S.Ct. 1570, 1576–77, 108 L.Ed.2d 842 (1990). "When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect." *Landgraf*, 511 U.S. at ——, 114 S.Ct. at 1505. If the court determines the

statute would operate retroactively, absent clear congressional intent to the contrary, the newly enacted statute should not be applied to a pending case. *Id.*

■ As part of the statutory scheme at issue here, Congress expressly stated in section 107(c) of the Act that the new "[c]hapter 154 ... shall apply to cases pending on or after the date of enactment of this Act." [1] No similar language appears in regards to the amendments to 28 U.S.C. §§ 2244, 2253 and 2254. The petitioner argues that the express inclusion of a provision making chapter 154 applicable to pending cases, and the absence of the same from the amendments to the existing habeas statutes, creates a negative inference that Congress did not intend for the amendments to apply to pending cases. In addition, the petitioner contends that two canons of statutory construction support this reading.

Relying on the maxim that a court should give effect to each word of a statute and avoid an interpretation that renders any provision meaningless, the petitioner argues that a construction which applies the amendments to pending cases would render superfluous the express command accompanying chapter 154. The petitioner also argues that because under the maxim *expressio unius est exclusio alterius* an express declaration as to one item requires the exclusion of others, the congressional statement that chapter 154 applies to pending cases operates to exclude a conclusion that Congress intended the amendments to have a similar effect.

The court finds these arguments unpersuasive. It is unnecessary to resort to the petitioner's proffered canons of statutory construction where the purpose and structure of the Act, as well as the Act's legislative history, provide a more immediate source of insight into Congress's intent. Review of these sources indicates that Congress intended that the amendments take effect at the same time chapter 154 became operative: on the date of enactment. *Cf., e.g., Herman & MacLean v. Huddleston*, 459 U.S. 375, 387 n.

---

1. The petitioner concedes that this provision requires the application of chapter 154 to all qualifying capital habeas corpus cases currently pending in federal court. *See Landgraf,* 511 U.S. at —, 114 S.Ct. at 1494 (interpreting a similar provision to mean that legislation containing such a provision would apply to pending cases).

22, 103 S.Ct. 683, 690 n. 22, 74 L.Ed.2d 548 (1983) (refusing to apply *expressio unius* because "such canons 'long have been subordinated to the doctrine that courts will construe the details of an act in conformity with its dominating general purpose,'" and holding that the availability of an express remedy under one section of the Securities Act of 1933 did not preclude maintenance of action under another section of the act, in light of the act's purposes); *Alcaraz v. Block*, 746 F.2d 593, 607–08 (9th Cir.1984) (declining to apply *expressio unius* because that canon "'is a product of logic and common sense,' ... and is properly applied only when the result to which its application leads is itself logical and sensible,'" and holding that congressional silence on application of certain statutory language did not indicate intent to limit scope of its operation where statute's purpose was a "wide-ranging remedial attempt to change the legal landscape"); *United States v. Castro*, 837 F.2d 441, 442–43 and n. 2 (11th Cir.1988) (collecting cases demonstrating that canons of construction "cannot apply when the legislative history and context are contrary to such a reading of the statute").[2]

Contrary to the petitioner's assertions, the legislative history relating to Title I of the Act reveals that Congress viewed the amendments to existing law and the creation of chapter 154 as a consolidated approach to achieving habeas reform. The joint conference report explains that Title I "incorporates reforms to curb the abuse of the statutory writ of habeas corpus, and to address the acute problems of unnecessary delay and abuse in capital cases." 142 Cong.Rec. H3333 (daily ed. April 15, 1996). The report goes on to cite the specific consequences of the new legislation without drawing a distinction between the amendments and chapter 154. *Id.* Similarly, the bill's sponsors portrayed the proposed statutory provisions as working in tandem to eliminate habeas abuse. *See, e.g.,* 141 Cong.Rec. S7803–50 (daily ed. June 7, 1995) (statements of Sen.

Hatch and Sen. Specter); 142 Cong.Rec. S3350–81 (daily ed. April 16, 1996) (same).

The structure of the Act also demonstrates that the new legislation was designed to work together to achieve Congress's purpose. In several instances, chapter 154's provisions are dependent upon the application of the amended versions of 28 U.S.C. §§ 2244, 2253 and 2254. For instance, pursuant to § 2262(c) of the new chapter, a habeas petitioner whose capital case was pending on the date the Act was signed into law, and whose case falls under chapter 154, cannot renew a stay of execution under that chapter "unless the court of appeals approves the filing of a second or successive application under section 2244(b)." Similarly, § 2264(b) of chapter 154 requires the habeas court to review the merits of the petitioner's claims in accordance with "subsections (a), (d), and (e) of section 2254."

These examples of statutory interaction strongly suggest that Congress meant for the Act to take effect as a whole. It is unlikely that Congress intended for the amended versions of 28 U.S.C. §§ 2244, 2253 and 2254 to affect only cases falling under chapter 154. In fact, the court is unable to locate any case law that would allow it to selectively apply the newly amended statutes to some pending cases but not to others. In all probability, Congress expressly addressed the application of chapter 154 because of the unique relationship that chapter has to state procedure.

Section 2261(b) provides that chapter 154 "is applicable if a State *establishes* ... a mechanism for the appointment ... of competent counsel in State post-conviction proceedings" that comports with the standards prescribed by the new chapter. (Emphasis added). This language suggests that chapter 154 only applies to cases where a state has, *in response to the adoption of chapter 154,* created an attorney appointment process which satisfies the chapter's standards. The chapter's reliance on a state's willingness to conform to the newly announced standards

---

**2.** Moreover, canons of construction necessarily provide an imprecise tool for resolving the meaning of a legislative enactment. *See, e.g., Erlenbaugh v. United States,* 409 U.S. 239, 243, 93 S.Ct. 477, 480, 34 L.Ed.2d 446 (1972) (canons

are only an attempt to reflect "practical experience in the interpretation of statutes"); *Landgraf,* 511 U.S. at —— and n. 16, 114 S.Ct. at 1496 and n. 16 ("many of the traditional canons have equal opposites").

necessarily implies that chapter 154 would only apply to future state proceedings.

Viewed in this light, it is not surprising that Congress expressly declared its intention that chapter 154 *could* apply to a capital habeas case currently pending in federal court where the state already had standards in place that satisfied the chapter's new requirements. The specific language stating the scope of the chapter's application was necessary to negate the inference, created by the statutory language, that the new chapter only affected future state cases.

By comparison, no similar statement regarding the date of effectiveness was necessary to guarantee the immediate application of the newly amended statutes, 28 U.S.C. §§ 2244, 2253 and 2254. The operation of the amendments is not dependent on a state's adoption of any particular standards and, therefore, Congress could safely presume that the amendments also would "apply to pending cases," because, as explained below, that is the norm for "remedial statutes." *Landgraf,* 511 U.S. at —— n. 37, 114 S.Ct. at 1507 n. 37.

Having concluded that Congress did not intend to limit the operation of the amendments, and finding instead that Congress most likely intended for the amended statutes to apply to all pending habeas corpus cases, the court will consider the second part of the *Landgraf* test to determine whether application of the new law would have retroactive effect. *Id.* 511 U.S. at ——, 114 S.Ct. at 1505.

■ A newly enacted statute will be deemed to have "retroactive effect" if it "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* Thus, if the new law is found to "affect vested rights and past transactions," *id.* 511 U.S. at ——, 114 S.Ct. at 1499, the court must presume that the new statute does not apply to pending cases, *id.* 511 U.S. at —— ——, 114 S.Ct. at 1499–1501.

**3.** This concept also applies to "procedural rules." *Landgraf,* 511 U.S. at ——, 114 S.Ct. at

■ In contrast, when the new law consists of "prospective-relief" legislation, a court should " 'apply the law in effect at the time it renders its decision,' even though that law was enacted after the events that gave rise to the suit." [3] *Id.* 511 U.S. at ——, 114 S.Ct. at 1501 (citation omitted). This rule does not contradict the presumption against retroactivity because the application of an intervening statute that affects the "propriety of prospective relief . . . is not retroactive." *Id.* Stated differently, a party to a pending case has no vested right in a statutory scheme that defines the scope of the party's prospective relief or the court's jurisdiction. *Id.* 511 U.S. —— – ——, —— n. 37, 114 S.Ct. at 1501–02, 1507 n. 37.

■ The statutes delineating the scope of a state prisoner's habeas corpus action are of the "prospective-relief" type. The remedial nature of the writ of habeas corpus is well established. *See, e.g., Peyton v. Rowe,* 391 U.S. 54, 65, 88 S.Ct. 1549, 1555, 20 L.Ed.2d 426 (1968). And there can be no doubt that a petitioner's requested relief is prospective in nature. Indeed, given the Eleventh Amendment's limitation on the ability of an individual to sue state officials in federal court, the writ's exclusive focus on prospective relief is a constitutional imperative. *See, e.g., Seminole Tribe of Florida v. Florida,* —— U.S. ——, —— n. 17, 116 S.Ct. 1114, 1133 n. 17, 134 L.Ed.2d 252 (1996); *id.* —— U.S. at —— – —— and n. 62, 116 S.Ct. at 1182–83 and n. 62 (Souter, J., dissenting).

■ Although designed to protect rights of paramount importance, the legislative provisions defining the writ's operation have never guaranteed a fixed statutory framework. Accordingly, a change to the writ's scope "speak[s] to the power of the court rather than to the rights or obligation of the parties." *Landgraf,* 511 U.S. at ——, 114 S.Ct. at 1502. Similarly, the court is unaware of any common law doctrine that creates in a state prisoner a vested right to habeas corpus review under the laws governing the writ's application at the time of trial

1502.

and sentencing.[4] Without a statutory or common law right at stake, a newly enacted statute is not deemed to "operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law." *Id.* 511 U.S. at ——, 114 S.Ct. at 1499 (citation omitted).

Because the court concludes that application of the amended versions of 28 U.S.C. §§ 2244, 2253 and 2254 to cases pending in federal court on the date of enactment would not have retroactive effect, and because the purpose, structure, and legislative history of the Act indicates Congress intended for the new legislation to govern existing cases, the court will apply the law now in effect to the petitioner's pending habeas action.

## ORDER

Based on the foregoing, and being otherwise fully advised in the premises, the court HEREBY ORDERS that:

(1) The previously ordered briefing schedule is reinstated as modified below.

a) The parties shall file point and authorities on the merits of the petition and any motions, including but not limited to motions for evidentiary hearing, summary dismissal, re: procedural default, and summary judgment, **no later than July 8, 1996.**

b) Any response in opposition to the points and authorities and to any motions shall be filed **no later than August 5, 1996.** Any reply by either party shall be filed **no later than August 19, 1996.**

c) The status conference scheduled for **June 17, 1996,** at 9:30 a.m., is **VACATED**

and will be rescheduled for a time convenient to the court and parties.

---

**4.** Because many of the claims asserted by a habeas petitioner relate to events that occurred at trial or sentencing, a state prisoner's expectations in prior habeas law could only be preserved by refusing to apply the amended statutes to all future habeas actions challenging a state criminal proceeding initiated prior to enactment of the new legislation. Such a result is clearly contrary to Congress's intent, *see* 142 Cong.Rec. H3333 (daily ed. April 15, 1996), and generally has not been accepted by the courts construing the new legislation, *see, e.g., Felker v. Turpin,* 83 F.3d 1303, 1304–07, 1310–11 (11th Cir.1996) (applying the amended version of 28 U.S.C. § 2244(b) when denying the petitioner's request to file a successive petition), *cert. granted,* —— U.S. ——, 116 S.Ct. 1588, 134 L.Ed.2d 685 (1996); *Houchin v. Zavaras,* 924 F.Supp. 115, 116–117 (D.Colo. 1996) (applying the amended version of 28 U.S.C. § 2253(c)(1) to a pending case). *But cf. Warner v. United States,* 926 F.Supp. 1387, 1390 (E.D.Ark.1996) (characterizing the amended version of 28 U.S.C. § 2255 as having retroactive effect).