Henry Earl DUNCAN, Petitioner,

v.

Arthur CALDERON, Warden
of California State Prison at
San Quentin, Respondent.

SA CV 92–1403–AHS.

United States District Court,
C.D. California,
Southern Division.

Nov. 27, 1996.

Mitchell Zimmerman, Fenwick & West L.L.P., Palo Alto, CA, Richard C. Neuhoff, San Francisco, CA, for petitioner.

Daniel E. Lungren, Attorney General of California, Emilio E. Varanini, Deputy Attorney General, Los Angeles, CA, for respondent.

ORDER GRANTING RESPONDENT'S MOTION TO VACATE ORDER GRANTING EVIDENTIARY HEARING; SETTING BRIEFING SCHEDULE

STOTLER, District Judge.

## I.

### PROCEDURAL BACKGROUND

An evidentiary hearing on petitioner's claims 5, 8, 12, 13 and 17 was set for May 7, 1996. On April 25, 1996, the day after the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub.L. 104–132, 110 Stat. 1214, was signed into law, respondent filed the instant motion to vacate the evidentiary hearing and to dismiss the claims that were subject to the evidentiary hearing. Petitioner filed a preliminary opposition on May 1, 1996. Respondent filed a reply to the preliminary opposition on May 2, 1996. The Court vacated the evidentiary hearing date of May 7, 1996, to consider the questions of whether the new habeas legislation applies to petitioner's case, and, if so, whether the new

law obviates the need for an evidentiary hearing. On June 28, 1996, petitioner filed a supplemental opposition to the motion. Respondent filed a reply to the supplemental opposition on July 17, 1996. Petitioner filed a response to the reply on July 23, 1996. A hearing on the motion was held on July 26, 1996.

By this Order, the court grants the State of California's motion to vacate the evidentiary hearing, defers ruling on its motion to dismiss the specified claims, and sets a briefing schedule for plenary consideration of the merits of the petition for writ of habeas corpus.[1]

## II.

### BACKGROUND

Petitioner Henry Earl Duncan was convicted of the first degree murder and robbery of Josephine Eileen DeBaun at a restaurant where they both worked. The jury found true the special circumstance allegation that the murder was committed in the course of a robbery, and that petitioner intended to and did kill the victim. The jury also found that petitioner personally used a knife in the commission of the murder and the robbery. After a penalty phase trial, the jury sentenced petitioner to death.

Petitioner's conviction and sentence were affirmed by the California Supreme Court on direct appeal. *People v. Duncan,* 53 Cal.3d 955, 281 Cal.Rptr. 273, 810 P.2d 131 (1991). In an unpublished order, the state court also denied Duncan's state habeas petition.

On March 4, 1993, Duncan filed a federal petition for writ of habeas corpus. Respondent filed an answer on July 8, 1993. Duncan filed an amended petition on October 8, 1993.

In an effort to simplify the proceedings, the parties agreed to, and the Court accepted, a case management plan pursuant to which the proceedings would be litigated in various phases. The first phase would consist of motions for summary judgment on

---

1. Petitioner's Motion to Reconsider Order Denying Petitioner's Motion For Leave to File Second Amended Petition for Writ of Habeas Corpus is the subject of a separate ruling.

various claims. The second phase was to consist of an evidentiary hearing on certain claims. The third phase would involve litigating the claims that remained to be decided after the evidentiary hearing.

The Court found the pace with which the case was proceeding unsatisfactory and so informed the parties at a hearing on December 22, 1994. The Court proposed to hold a hearing wherein all the evidence bearing on any and all of petitioner's claims that might justify the taking of evidence could be received at one time. Pursuant to the parties' ensuing stipulation, the Court scheduled an evidentiary hearing on claims 5, 8, 12, 13 and 17 for November 7, 1995. The hearing was continued and ultimately rescheduled for May 7, 1996. In setting the evidentiary hearing, the Court had not made an independent legal determination that an evidentiary hearing was necessarily warranted on those claims, but proceeded to schedule the hearing pursuant to the parties' agreement.

### III.

#### *ANALYSIS*

A. *Retroactive Application of the Anti–Terrorism and Effective Death Penalty Act of 1996 (the "Act")*

The Anti–Terrorism and Effective Death Penalty Act of 1996 (the "Act") was signed into law on April 24, 1996. Among other things, it amends the statutes governing federal habeas corpus petitions and sets time limitations on the filing and disposition of habeas petitions in federal court. The Act contains several amendments to the current habeas corpus provisions in Chapter 153 and creates a new Chapter 154 that applies only to death penalty cases and provides a system of expedited review and other benefits to states that satisfy the specific requirements of the Chapter.

■ The first issue, then, is whether the provisions of the Act apply to petitioner's federal habeas proceedings, which were initiated before the Act became law.

■ In *Landgraf v. USI Film Prod.,* 511 U.S. 244, ——, 114 S.Ct. 1483, 1497, 128 L.Ed.2d 229 (1994), the Supreme Court set out a three-step analysis to determine whether a federal court should apply a new law to pending cases. First, the language of the statute is the starting point to discern whether Congress clearly expressed an intent that the new law apply to pending cases. *Id.* at ——, 114 S.Ct. at 1492. Where Congress' intent on retroactivity is clear, it governs. However, when no clear intent is expressed, the Court must determine whether application of the new law would have "retroactive effect." A law has retroactive effect if it "attaches new legal consequences to events completed before its enactment," that is, if it would "impair the rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* at ——, ——, 114 S.Ct. at 1499, 1505. "In sum, *Landgraf* mandates that if Congress does not prescribe the scope of a statute, we apply intervening civil legislation to pending cases unless it would operate retroactively." *Lennox v. Evans,* 87 F.3d 431, 432 (10th Cir.1996). The Court's analysis is guided by familiar considerations such as fair notice, reasonable reliance and settled expectations. *Landgraf,* at ——, 114 S.Ct. at 1505.

■ The Court's inquiry into retroactive effect is informed, but not controlled, by whether a particular provision is substantive or procedural. A new procedural law can generally be applied without retroactive effect. "Because rules of procedure regulate secondary rather than primary conduct, the fact that a new procedural rule was instituted after the conduct giving rise to the suit does not make application of the rule at trial retroactive." *Chenault v. United States Postal Serv.,* 37 F.3d 535, 537–38 (9th Cir. 1994) (*quoting Landgraf, supra,* at ——, 114 S.Ct. at 1502).

■ When the provision at issue does not fit squarely into the procedural or substantive compartment, the Court should ascertain whether application of the new law would prejudice the rights of one of the parties. *Chenault,* 37 F.3d at 539. Moreover, the new law will not be applied to pending cases if "manifest injustice" would result. *Id.*

The nature of habeas corpus proceedings is unique. The right to habeas relief, while important to protect constitutional rights, is collateral to the crime, the trial, and the direct appeal. *Barefoot v. Estelle*, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391–92, 77 L.Ed.2d 1090 (1983). Habeas proceedings bridge state and federal adjudications and are influenced by concerns of comity, finality, and federalism. The unique nature of habeas litigation makes it difficult to apply the rule regarding retroactive application of statutes set forth in *Landgraf*, because the concepts expressed there are not well suited to manage the considerations presented in a capital habeas proceeding.[2]

### 1. *Clear Intent*

Congress did not expressly state whether the modifications to chapter 153 apply to pending cases. However, chapter 154 of the Act, which establishes special procedures for capital cases if the state courts comply with the requirements of that chapter, is made expressly applicable to pending cases. Act, Title I, Sec. 107(c). Petitioner argues that because Chapter 154 has an express provision making it applicable to pending cases and chapter 153 has no express provision, Congress intended that only the provisions of chapter 154 apply to pending cases. Petitioner argues that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 300–01, 78 L.Ed.2d 17 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir.1972)).

While some courts have relied on this argument to find that the amendments to chapter 153 should not be applied to pending cases, *see, e.g., Wilkins v. Bowersox*, 933 F.Supp. 1496, 1506 (W.D.Mo.1996); *Burkett v. Love*, 89 F.3d 135, 137 (3rd Cir.1996), the

argument loses its persuasiveness in light of the pragmatic consideration that the presence of effective date clauses in some sections, subtitles, and titles of the Act may merely reflect Congress' inability to resolve the issue of whether new § 2254 should apply to pending cases. Congress may have viewed the matter as "an open issue to be resolved by the courts." *Landgraf*, at ——, 114 S.Ct. at 1494.

Certain provisions of the Act were made expressly applicable to pending cases. *See, e.g.,* Act § 221 (subtitle B of Title II applicable to all causes of action arising before, on, or after the date of enactment). Other provisions were made expressly applicable only to cases filed after the date of enactment. *See, e.g.,* Act § 211 (subtitle A of Title II applicable to all cases in which defendant convicted on or after date of enactment). There are also various provisions where Congress provided no guidance relating to retroactivity. The relevant amendments to chapter 153 fall in the last category. Because there is no effective-date clause in Title I of the Act, it cannot be said that there is a clearly expressed intent on the retroactivity question.

While Congress did not clearly express its intent as to the retroactive application of new § 2254, the Court can construe the Act as a whole to determine if there is evidence of Congress' implied intent. As reasoned in *Leavitt v. Arave*, 927 F.Supp. 394, 397 (D.Idaho 1996), the structure of the Act demonstrates that the new legislation was designed to work together to achieve Congress' goal of curbing abuse of the writ of habeas corpus and unnecessary delay. A careful reading of chapter 154 and the amendments to chapter 153 suggests that the provisions were meant to work together and, as such, were designed to apply to pending cases. Some provisions of chapter 154 are dependent on the provisions of amended chapter 153. For instance, § 2264(b) of chapter 154 requires the federal court to review the merits of a petitioner's claims in accordance with

---

2. For example, *Landgraf* discusses laws that affect primary as opposed to secondary conduct. However, neither party could clearly articulate the conduct affected by application of the new law. The possibilities could include the crime itself, petitioner's state court proceedings, or

even petitioner's federal court proceedings. One court has offered the sound response that "Section 2254(d) does not regulate primary conduct. Instead it makes the initial judgment more stable." *Lindh v. Murphy*, 96 F.3d 856, 864 (7th Cir.1996).

"subsections (a), (d) and (e) of section 2254." This example of statutory interaction "strongly suggest[s] that Congress meant for the Act to take effect as a whole." *Id.* It is a reasonable interpretation of the Act to conclude that, since the provisions of Chapter 154 were made expressly applicable to pending cases, Congress also intended that the provisions of chapter 153 apply to pending cases.

### 2. Retroactive Effect

To determine whether the Act can be applied retroactively, the Court must independently review each provision of the Act and decide whether the provision can be applied without the prohibited result. *Chenault,* 37 F.3d at 537.

#### a. Section 2254(d)

Respondent argues that, before petitioner can claim he is entitled to an evidentiary hearing under § 2254(e)(2), he must satisfy the requirements of § 2254(d), which states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d)

Respondent claims new § 2254(d) creates a standard of review that requires this Court to defer to the California Supreme Court's decisions on petitioner's claims unless those decisions were unreasonable or arbitrary. Because the state supreme court's decisions were reasonable, respondent argues, petitioner cannot gain relief on any claim addressed by the state court on the merits, and, there-

fore, the district court should not hold an evidentiary hearing on those claims.

Petitioner argues that the new law has retroactive effect because it changes the standard he would have to meet to obtain relief and denies him an opportunity to prove his habeas claims in federal court.

#### i. Section 2254(d) is Not a Jurisdictional Statute

The Supreme Court regularly applies "intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed." *Landgraf,* at ——, 114 S.Ct. at 1501. However, new § 2254(d) is not jurisdictional. The provisions of § 2254(d) do not confer or oust the Court of jurisdiction to address petitioner's claims. The provisions change the standard the federal court uses to review petitioner's claims, not the Court's ability to review those claims. Therefore, respondent's arguments regarding the retroactive application of jurisdictional statutes are inapposite.

#### ii. Section 2254(d) Affects Prospective Relief.

"When the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive." *Landgraf,* at ——, 114 S.Ct. at 1501. Habeas relief is prospective in nature. *Leavitt,* 927 F.Supp. at 398. "Indeed, given the Eleventh Amendment's limitation on the ability of an individual to sue state officials in federal court, the writ's exclusive focus on prospective relief is a constitutional imperative." *Id.* (citing *Seminole Tribe of Florida v. Florida,* —— U.S. ——, —— n. 17, 116 S.Ct. 1114, 1133 n. 17, 134 L.Ed.2d 252 (1996) and *id.* at ———— & n. 62, 116 S.Ct. at 1182–83 & n. 62 (Souter, J., dissenting)). A writ of habeas corpus is designed to test the constitutionality of a state prisoner's conviction or sentence. The relief granted is the release from custody, a new trial, or commutation of a death sentence. *Herrera v. Collins,* 506 U.S. 390, 403–04, 113 S.Ct. 853, 862, 122 L.Ed.2d 203 (1993). Petitioner is not entitled to compensation for the time spent in prison, lost

wages, or other damages for past harms. Because the new law affects petitioner's right to prospective relief, the Court should "apply the law in effect at the time it renders its decision." *Landgraf*, at ——, 114 S.Ct. at 1501.

### iii. *Application of Section 2254(d) Does Not Affect Petitioner's Vested Rights.*

■ If the new law were found to affect vested rights, application of the new law would have retroactive effect. *Landgraf*, at —— – ——, 114 S.Ct. at 1499–1501. Petitioner argues that application of the new law to his case would affect his vested right to *de novo* review by the federal court of a state court decision on the merits of petitioner's constitutional claims. Petitioner claims he has a vested right to *de novo* review. Petitioner's arguments are unavailing. He has presented no authority, and the Court is aware of none, to support the proposition that a state prisoner has a vested right to a particular standard of review in federal habeas proceedings. "[A] party to a pending case has no vested right in a statutory scheme that defines the scope of the party's prospective relief or the court's jurisdiction." *Leavitt*, 927 F.Supp. at 398. As discussed above, new § 2254(d) is not jurisdictional. It is similar to a jurisdictional statute, however, in that it "speak[s] to the power of the court rather than to the rights or obligations of the parties." *Landgraf*, at ——, 114 S.Ct. at 1502.

Petitioner's argument that, for most of this century, state prisoners were entitled to *de novo* review of their convictions by federal courts is inaccurate. Before the 1953 decision in *Brown v. Allen*, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953), a federal court could not review a claim that had been fully and fairly adjudicated on the merits in state court. *Ex Parte Hawk*, 321 U.S. 114, 118, 64 S.Ct. 448, 450–51, 88 L.Ed. 572 (1944).

■ The right to *de novo* review is not a vested, substantive right, and the fact that application of the new law might impair the nature of review does not require a finding of retroactive effect. As long as the application of a new law does not burden a vested right, "the potential unfairness of retroactive civil legislation is not a sufficient reason for a court to fail to give a statute its intended scope." *Landgraf*, at ——, 114 S.Ct. at 1498. Application of new § 2254(d) does not have a retroactive effect and therefore the Act applies to petitioner's case.

The Court of Appeals for the Seventh Circuit has also ruled that the statute may be applied to pending cases. In *Lindh v. Murphy*, 96 F.3d 856 (7th Cir.1996), the Court reasoned that "legal changes that reduce the willingness of federal courts to set aside judgments presumptively apply to existing judgments. This is the historical practice." *Id.* at 864–865. According to the Court of Appeals for the Third Circuit: "Of the circuit courts of appeals that have had the opportunity to consider the retroactivity issue, two courts have determined that the AEDPA [Anti-Terrorism and Effective Death Penalty Act of 1996]'s changes to § 2254 are not to be applied retroactively, see *Boria v. Keane*, 90 F.3d 36 (2d Cir.1996) and *Edens v. Hannigan*, 87 F.3d 1109, 1112 n. 1 (10th Cir. 1996), and one court has found that the AEDPA is to be applied retroactively in non-capital cases. *Lindh v. Murphy*, 96 F.3d 856 (7th Cir.1996) (en banc)." *Berryman v. Morton*, 100 F.3d 1089, 1102 (3rd Cir.1996). The Court agrees with the reasoning of the en banc decision of the Seventh Circuit.

### b. *Section 2254(e)(2)*

For the reasons expressed above, the Court also finds that the provisions of new § 2254(e)(2) apply to petitioner's case.

### B. *Application of the Act*

New § 2254(d) requires that a federal habeas court defer to a state court judgment on the merits of petitioner's claims if the state court's decision is reasonable in light of the facts alleged in state court and the controlling law at the time of the decision as determined by the United States Supreme Court. Petitioner argues that, even if the new law is applied to his case, he is still entitled to an evidentiary hearing. However, as explained below, because new § 2254(d) applies to this case, an evidentiary hearing need not be held.

### 1. *Unexplained Decisions*

Petitioner argues that the new standard of deference to a state court decision on the merits of petitioner's claims should not apply to those claims that were denied by the state court without comment. Petitioner argues that an adjudication on the merits requires an explained decision by the state court. Therefore, at least on those claims that were disposed of with a "postcard denial," petitioner would be entitled to an evidentiary hearing.

The Court rejects petitioner's arguments.

First, the statute does not specifically state that the new standard of deference should apply only to state court decisions where the state court explains its reasoning in a written opinion. In California, unexplained denials of habeas claims are considered decisions on the merits. *Hunter v. Aispuro,* 982 F.2d 344, 347 (9th Cir.1992). Had Congress wanted to require that state court decisions be "explained," it could easily have put this requirement in the Act.

Second, there appears to be a close affiliation between the provisions of new § 2254(d) and the rule set forth in the plurality opinion of *Teague v. Lane,* 489 U.S. 288, 306, 109 S.Ct. 1060, 1073, 103 L.Ed.2d 334 (1989), governing federal habeas adjudications and subsequent decisions interpreting the *Teague* doctrine. A comparison of the statute and the *Teague* line of cases reveals an apparent intent by Congress to expand the *Teague* rule to require deference to state court determinations of legal questions and mixed questions of law and fact.

Under *Teague,* federal habeas courts must uphold reasonable state court legal determinations based on federal law that was clearly established at the time of the original proceeding. A habeas petitioner cannot benefit from a new law of criminal procedure announced after his conviction has become final on direct appeal. *Wright v. West,* 505 U.S. 277, 291, 112 S.Ct. 2482, 2489–90, 120 L.Ed.2d 225 (1992). A rule is considered new "whenever its validity under existing procedures is subject to debate among reasonable minds or among reasonable jurists." *Id.* at 291 n. 8, 112 S.Ct. at 2490 n. 8 (internal cites and quotations omitted). The principle announced in *Teague* requires federal courts to affirm "reasonable, good-faith interpretations of existing precedents made by state courts." *Butler v. McKellar,* 494 U.S. 407, 414, 110 S.Ct. 1212, 1217, 108 L.Ed.2d 347 (1990). Therefore, under the *Teague* line of cases, federal habeas review is controlled by the law existing at the time the prisoner's conviction became final and relief is conditioned on the adequacy of the original proceeding. *Teague,* 489 U.S. at 306, 109 S.Ct. at 1073.

The text and legislative history of new § 2254(d) parallel Supreme Court habeas jurisprudence and reflect a congressional intent to require deference to state decisions that are reasonably consistent with the facts alleged and the law as it stood at the time of the original proceeding. Both new § 2254(d) and case law at the time the Act was passed provide the same functional standard: notwithstanding changes in constitutional interpretation, a federal habeas court may not relieve a prisoner from a state conviction or sentence unless reasonable jurists "would have felt compelled by existing precedent" to grant relief during the original proceeding. *See Saffle v. Parks,* 494 U.S. 484, 488, 110 S.Ct. 1257, 1260, 108 L.Ed.2d 415 (1990).

Based on the foregoing, and confronted with an unexplained state court decision, the Court finds that it may apply a *Teague*-type analysis to determine whether the state court's determination was reasonable given the evidence presented in state court and the law as it existed at the time of the decision. However, the *Teague* analysis is used by analogy. Instead of deciding whether reasonable minds could differ about whether to grant relief based on existing precedent, the Court will decide whether, based on the facts presented in state court and the law at the time, a reasonable jurist could have come to the conclusion reached by the state court. Therefore, because the analysis is not specifically limited to how the state court came to the conclusion, but rather the reasonableness of the decision itself, it is not necessary for the state court's decision on the merits of petitioner's claims to be "explained."

### 2. No Evidentiary Hearing is Required.

■ The new law instructs the federal court to determine whether the state court's decision on the merits of petitioner's claims was reasonable. The language of the new law regarding factual questions requires the federal court to determine whether the adjudication of the claim by the state court "resulted in a decision that was based on an unreasonable determination of the facts *in light of the evidence presented in the State court proceeding.*" 28 U.S.C. § 2254(d)(2) (emphasis added). This language directs the Court to determine whether the state court's decision was reasonable based solely on the evidence presented to the state court.

For mixed questions of law and fact, Congress must have intended the same result. To determine whether the state court's decision involved an unreasonable application of clearly established law to the facts, the Court should, based on the language of § 2254(d)(2), look only to what facts were presented in state court.

For these reasons, there is no need to take additional evidence in the district court. The Court will look to the evidence presented in state court and determine, based on the law at the time, whether the state court's decision was reasonable. Accordingly, an evidentiary hearing is no longer necessary for the Court to decide petitioner's claims. The Court, therefore, vacates its order granting an evidentiary hearing.

### C. Constitutionality of the New Act

Petitioner claims that application of new § 2254(d)'s deferential standard of review to petitioner's case would violate the Federal Constitution in three ways. First, petitioner argues that to require a federal habeas court to give substantive deference to state court decisions violates the Article III principle that "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803). Second, petitioner argues that application of the new law would violate his due process rights. Third, petitioner asserts that application of the new law would suspend the writ in violation of Article I, section 9 of the United States Constitution.

■ A party challenging the constitutionality of a statute bears a heavy burden. *New York State Club Ass'n v. City of New York,* 487 U.S. 1, 108 S.Ct. 2225, 101 L.Ed.2d 1 (1988). The Act comes to the Court with a presumption of constitutionality, and the burden is on petitioner to establish that the Act violates the Constitution. *See Usery v. Turner Elkhorn Mining,* 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976). Petitioner has failed to meet his burden.

■ In passing § 2254(d), Congress has not usurped the Court's judicial function. Under the Act, federal courts are still able and required to exercise independent judgment to determine whether the state court's decision was contrary to, or involved an unreasonable application of, federal law. If the state court's application of federal law was unreasonable, the federal court has the power to grant the writ. Therefore, the Act does not violate Article III.

■ The Court rejects petitioner's claim that application of the new law would violate his due process rights. Petitioner argues that application of the new law "offends some principle of justice so rooted in the traditions and conscience of our people to be ranked fundamental." *Cooper v. Oklahoma,* —— U.S. ——, ——, 116 S.Ct. 1373, 1383, 134 L.Ed.2d 498 (1996) (internal quotations omitted). Petitioner argues that the new law requires less than the Court's "best judgment" concerning federal constitutional issues. However, as stated above, the federal court will still determine whether the state court reasonably applied clearly established federal law. Therefore, the Court rejects petitioner's argument that application of the new law violates the due process clause.

■ The suspension clause in Article I of the federal Constitution states: "[T]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. Without showing how new § 2254(d) violates the suspension clause, petitioner's claim cannot prevail. In *Felker v. Turpin,* —— U.S.

814

——, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996), the United States Supreme Court stated, "[t]he added restrictions which [§ 106 of] the Act places on second habeas petitions are well within the compass of th[e] evolutionary process [of the abuse of the writ doctrine], and we hold that [the added restrictions] do not amount to a 'suspension' of the writ contrary to Article I, § 9." *Id.* at ——, 116 S.Ct. at 2340 (citing *Swain v. Pressley,* 430 U.S. 372, 385, 97 S.Ct. 1224, 1231–32, 51 L.Ed.2d 411 (1977) (Burger, C.J., concurring)).

Congress has changed the standard of review on federal habeas; it has not taken the power from the federal courts to review or grant a habeas petition. Since Congress has not suspended the Court's ability to decide § 2254 cases, the Court rejects petitioner's suspension of the writ argument.

D. *Further Proceedings*

Based on the Court's ruling, both parties will be given an opportunity to brief the remaining claims in the petition to guide the Court in determining whether the state supreme court's decision on those claims was reasonable. Petitioner shall file his brief no later than January 31, 1997. Respondent shall file his response no later than March 31, 1997. Petitioner may file a reply brief, if any, no later than thirty (30) days following receipt of respondent's response. After considering the briefs and the state court record, the Court may entertain oral argument at a date to be set and thereafter render a final decision on Duncan's federal habeas petition.

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the Clerk serve this Order on all counsel of record.